564 A.2d 222

Catherine M. KOHL

v.

John Carl KOHL, Appellant.

Catherine M. KOHL, Appellant,

v.

John C. KOHL.

Superior Court of Pennsylvania.

Argued March 20, 1989.

Filed Sept. 5, 1989.

368

Arthur L. Jenkins, Jr., Norristown, for John Carl Kohl.

James V. Fareri, Stroudsburg, for Catherine M. Kohl.

Before MONTEMURO, TAMILIA and MONTGOMERY, JJ.

TAMILIA, Judge:

Catherine Kohl (hereinafter "wife") and John Kohl (hereinafter "husband") were married on September 2, 1961 and two children were born of the marriage who are now emancipated. Wife filed a complaint in divorce on August 10, 1983 and the court appointed Salvator Vito as master on April 23, 1985. Several hearings were held between June 1985 and April 1986 and wife filed her brief with the master on January 6, 1987, with husband filing his soon thereafter.

On April 11, 1988 wife petitioned for recusal of master Vito and requested a de novo hearing as Vito had not yet filed his report and in fact, was in contempt of court for failure to abide by court Orders relating to his own acrimonious divorce action. Vito did file the report on April 18, 1988 and exceptions by the parties were filed thereafter, the disposition of which is now being appealed by both parties. Additionally, wife appeals the court's denial of her petition for recusal; we will first address that issue.

Wife argues not only did the master, Vito, fail to timely render a decision in their case, but he was suffering from drug and alcohol abuse and was in the middle of his own divorce, both of which situations prejudiced her. Vito denies any prejudice was suffered by wife and she fails to point to any instance where the master acted in a biased or hostile manner toward her. Although he admits he was not in compliance with the procedural rules regarding the time for filing his report, he counters that wife's counsel did not question the delay until the master's marital difficulties were publicized, thus making it appear wife was simply trying to use the master's personal problems to her advantage to obtain an opportunity to submit new or additional evidence because she was unhappy with the report.

While we understand how wife could believe she was prejudiced under these circumstances, we find the trial court did not err in refusing to grant her petition for recusal. Certainly we do not condone the master's tardiness in filing his report, but the issue of whether he should have been recused because his findings and report were biased against wife must be resolved in the master's favor when, as here, no specific allegations of bias are stated or proven. The master's report and recommendations are advisory only; the trial court is required to make an independent review of the report and recommendations to determine whether they are appropriate. *Goodman v. Goodman*, 375 Pa.Super. 504, 544 A.2d 1033 (1988). This being the case, any possible bias on the part of the master would be reviewed by the trial court and corrected since the trial court was responsible for making the final Order.[1]

Of the other issues raised by wife, the first is that the court erred in denying her request for alimony, alimony pendente lite and counsel fees and expenses. Under the Divorce Code,[2] 23 P.S. § 101 *et seq.*, alimony may be awarded by the court if the party seeking alimony lacks sufficient assets to support herself and is unable to support herself through appropriate employment. 23 P.S. § 501(a). Our review of the record discloses nothing which would cause us to find the trial court abused its discretion in finding the wife has sufficient assets on which to live and support herself and is able to supplement the award by obtaining appropriate employment. We find the trial court was correct in rejecting her claim.

Alimony pendente lite and counsel fees and expenses may be awarded in proper cases by the court upon petition by a party. 23 P.S. § 502. The trial court determined wife was

1. We note that the trial judge who entered the Order appealed from in the instant case is the same judge involved in the master's divorce action and who found the master in contempt of court. Therefore, the judge was well aware of the master's situation and was likely to examine his report and recommendations more closely.

2. This action is governed by the Divorce Code language as it existed prior to the amendment of Act 1988, No. 13, effective February 12, 1988.

not in need of alimony pendente lite or counsel fees and expenses because the purpose of such an award is to enable the dependent spouse to adequately litigate the divorce action and pursue her rights.

Wife received $200 per week from husband from the time they separated in 1981 until May of 1988. He also made the mortgage payments on the marital residence in which wife has continued to reside, and he paid the taxes, insurance and monthly oil bill for the home. In light of this and the wife's earnings, the court found wife had adequate resources to maintain the divorce action and support herself. Wife is presently earning $100 per week at a part-time job but could obtain full-time employment if her needs warranted it.

Our standard of review is narrow on issues such as this, being an abuse of discretion standard. *Adelstein v. Adelstein*, 381 Pa.Super. 221, 553 A.2d 436 (1989), *Barner v. Barner*, 364 Pa.Super. 1, 527 A.2d 122 (1987). We find the trial court did not err in denying wife's claim for alimony pendente lite and counsel fees and expenses. Counsel fees are not awarded automatically and the petitioning spouse must show actual need before such an award is justified. *Adelstein, supra.* "Counsel fees are appropriate when necessary to put the parties 'on par' in defending their rights or in allowing an action for divorce." *Id.* 381 Pa.Super. at 224, 553 A.2d at 437. "An award of alimony pendente lite is designed to enable the dependent spouse to maintain or defend the action in divorce." *Barner, supra,* 364 Pa.Super. at 18–19, 527 A.2d at 131. Due to husband's continued support payments to wife for approximately seven years after separation and her income, we believe the court was correct in finding an award of alimony pendente lite and counsel fees and expenses was not necessary.

The next issue we must address, the only issue presented by husband on appeal, concerns the trial court's equitable distribution award. Wife argues she did not receive a full 50% of the assets even though the court stated in its decree each party would receive an equal share,

whereas husband argues the court should not have conclud-
ed the bowling alley corporation was marital property sub-
ject to equitable distribution. The focus of both parties'
arguments is the bowling alley corporation acquired from
husband's father. For the sake of understanding and
"readability," prior to our discussion of the equitable distri-
bution of the bowling alley we will address wife's conten-
tion the court erred in its valuation of the business.

The trial court found husband's expert to be more credi-
ble than wife's and accepted his valuation of $540,000
rather than accepting wife's expert's valuation of between
$590,000 and $690,000.

> The Divorce Code does not include a specific method of
> valuing assets. We have previously held that the court
> must exercise its discretion, relying upon the estimates
> and inventories submitted by both parties, the records of
> purchase prices, and appraisals. In determining the val-
> ue of marital property, the court is free to accept all of
> the testimony, portions of the testimony, or none of the
> testimony regarding the true and correct value of the
> property.

*Aletto v. Aletto*, 371 Pa.Super. 230, 242, 537 A.2d 1383, 1389
(1988) (citations omitted). We find no error in the trial
court's acceptance of husband's expert's valuation, noting
that even by using his figure the value of the property
increased by 170 per cent during the time period in ques-
tion.

The parties were married in 1961 at which time husband
worked for his father at the bowling alley owned and
operated by him. Husband continued to work there until
the fall of 1968 when he purchased the business from his
father through a purchase agreement. The agreement
stated the purchase price as being $200,000, although simul-
taneous to the execution of the agreement, father made a
gift of $50,000 to husband, thereby reducing the indebted-
ness to $150,000 which was to be repaid at a rate of $909.08

per month. The stock certificates of the corporation were transferred to husband and held in his name alone.[3]

Husband operated the business and made the monthly payments to his father until his father died in October 1970. Father's will provided as follows:

FIFTH: I give unto my son, John C. Kohl, any amount due and owing on account of principal or interest on account of certain indebtedness evidenced by the promissory note of my said son in the amount of Two Hundred Thousand ($200,000) Dollars dated September 1, 1968, said indebtedness being the same as that secured by a bond and mortgage given by Stroud Lanes, Inc., the sole stockholder of which is my said son, John C. Kohl.

Defendant's Exhibit # 10.

Husband claims he acquired the bowling alley business as a gift through his father's will, thereby exempting this asset from marital property under section 401(e)(3) of the Divorce Code.[4] The trial court rejected this argument, finding the original gift of $50,000 is not includable with marital property but the remainder of the acquisition is marital property subject to equitable distribution. The court went on to determine the value of the business to be $540,000, the value given by husband's expert who had more credibility, according to the court, than wife's expert

3. This fact is not dispositive to the issue of whether or not the corporation is marital property for purposes of equitable distribution. Section 401(f) of the Divorce Code provides:

(f) All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

4. (e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

.    .    .    .    .

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

23 P.S. § 401(e)(3) (pre–1988 Act).

who valued the business at $590,000 to $690,000.[5] According to the trial court, therefore, the total appreciation amounted to $340,000, in addition to the $150,000 original value ($200,000 less $50,000 gift), for a total of $490,000 to be considered marital property.

Our first consideration must be whether the father's will bequest forgiving the debt amounted to a gift to his son, thereby making the bowling alley corporation non-marital property. The trial court relied on *MacBeth v. MacBeth* 35 D. & C.3d 339 (1985), which held that forgiveness of a debt extinguishes liability but does not constitute a "gift" of property as referred to in § 401(e)(3) of the code. Husband claims this is error and *Campbell v. Campbell*, 357 Pa.Super. 483, 516 A.2d 363 (1986) (en banc), is controlling. In *Campbell*, husband's father was part owner of a candy company and gave one-half his interest to husband, valued at $26,000. Six thousand dollars ($6000) was an outright gift and husband borrowed $20,000 from a bank to pay the balance due. Father, however, was the one who repaid the loan taken out by husband. This Court, en banc, determined father had made a gift to husband and it was received as a gift, therefore, husband's interest in the business was not marital property.

We believe *Campbell* is controlling. It is of no significance that the father paid off a loan for the balance due in *Campbell* or *"gave"* the son the amount due on a loan as is the case here. In either case the satisfaction of the outstanding obligation was a gift by the father to the son. Since the stock was transferred to the son alone under the initial agreement, forgiveness of the outstanding indebtedness of the son by the father in his will was consistent throughout to the grant of a gift to the son. There appears to be no intent to make a gift to the entireties. *See*

5. We note wife's argument that no value was placed on the land on which the bowling alley sits, however, the valuation given by husband's expert purports to include all aspects of the business including the land and physical plant. (*See* N.T. 10/29/85, p. 152.) The value given is the value of the bowling alley business as it currently exists which is a proper valuation.

*Campbell, supra.* Only if the outstanding loan had been paid off with income generated during the marriage would the property have acquired the status of marital property. Forgiveness of debt by the father to the son at father's death completed the gift which, during the lifetime of the father, was conditioned on the father's death. The gift of the remaining indebtedness, however, is subject to a charge of $23,634 (26 payments × $909 each) paid toward the loan from marital assets. The forgiveness, therefore, was of $126,366 ($150,000 loan (after $50,000 gift) ± $23,634 paid = $126,366). The total gift, therefore, was $176,366.

Husband's father died in October 1970, the sale was entered into September 1968, which is also the date of the $50,000 gift. The final separation occurred in April 1981. Thus, there appears to be a substantial increase in value of the gift of $50,000 from 1968 to 1981, and of the $126,366 between October 1970 and April 1981, all of which is marital property pursuant to section 401(e). The marital property, therefore, is represented by 1) the $23,634 and its increase in value to the time of distribution, 2) whatever increase in value occurred on the initial $50,000 gift to the date of separation, and 3) the increase in value of the $123,666 forgiveness between the date of father's death and the time of final separation. The gifts in and of themselves ($50,000 and $123,666) are not marital property subject to distribution. To arrive at the figure for distribution, findings are necessary as to the value of the bowling alley at the time of separation as well as the date of distribution. In addition, the trial court will have to determine the percentage or ratio of value represented by the increase in value of the gifts and the $23,634 payoff, as to the total value of the property, at the relevant times for fixing value.

Wife's final claims which remain to be considered are that she was not awarded her marital share of the value of husband's condominium in St. Martin, a valuable watch and husband's interest in the land on which the racquetball

facility sits. As to the time share property in St. Martin and the watch, although the trial court fails to mention either in its Opinion, we agree with the master that as the purchase of the St. Martin property took place after the couple's separation and as there was no evidence the purchase depleted the marital estate, the property is not subject to distribution. 23 P.S. § 401(e)(4); Master's Report, 4/18/88, p. 12. With regard to the "valuable watch purchased by her husband," appellant refers to in her brief at page 13, we find no reference to it either in wife's exceptions to the master's report or anywhere in the record nor has wife referred us thereto. Wife has therefore waived any claim she may have had to the watch. With regard to the racquetball facility property, husband testified he receives $1 per year in rental from the club (N.T. 1/31/86, p. 72) and does not rent the land at its fair market value because he just wants to be rid of the problems associated with the racquetball corporation (N.T. 1/31/86, p. 108). He also testified he receives $968.01 per month from his former business partner for the sale of his stock in the racquetball corporation; this monthly payment is the result of a $60,000 note at 15 per cent interest payable to husband. (*See* N.T., 6/25/85, p. 34). Although wife claims an interest in the land, the trial court does not address the issue in its Opinion or decree. Certainly this land is an asset of husband's which may be subject to equitable distribution, wife's share being one-half in accordance with the trial court's division of property. Accordingly, on remand the trial court is directed to determine the value of this property and make an adjustment to the equitable distribution award if necessary.

Order of the trial court is affirmed except as to the distribution decreed of the bowling alley and racquetball facility; as to equitable distribution of the value attributed to the bowling alley and racquetball facility, case is remanded for further proceedings consistent with this Opinion.

Jurisdiction is relinquished.