614 A.2d 742

**Eugene HARASYM, Appellant,**

v.

**Beverly Ann HARASYM, Appellee.**

Superior Court of Pennsylvania.

Argued April 23, 1992.

Filed Sept. 15, 1992.

James T. McHale, Scranton, for appellant.

David Ratchford, Scranton, for appellee.

Before ROWLEY, President Judge, and MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order denying appellant's exceptions to the Master's recommendations in equitable distribution matters entered in the Court of Common Pleas of Lackawanna County on August 2, 1991. Appellant argues on appeal that the trial court erred in its valuation of stock which he owns in Lakawanna Medical Group, P.C., in its award of alimony, and, in awarding counsel fees to appellee (wife). We affirm.

Appellant and appellee were married on June 28, 1978, and have two daughters from their marriage, Alyssa, born January 20, 1980, and Adrianna, born May 4, 1983. The parties separated in July of 1988, and appellant instituted a divorce

action on February 27, 1989. On July 13, 1990, appellee filed a petition for alimony pendente lite, spousal support, alimony, equitable distribution and counsel fees and expenses. Appellant has not had any contact with his children since the separation other than sending support payments. Appellant is a physician. Appellee has returned to work after the separation and is a speech therapist.

Appellant filed a motion for bifurcation which was denied on December 20, 1990. The trial court concluded that litigation pending at the time against appellant individually and as a principal in Lackawanna Medical Group, P.C. could threaten appellee's economic claims.

The Master conducted three days of hearings and submitted his report to the trial court on January 3, 1991. Child support was continued in the amount of $1,429.95 per month. Alimony was awarded in the amount of $1,300.00 per month for a period of 120 months. Appellee's claim for counsel fees and expenses was denied. Equitable distribution was recommended as follows:

TO [APPELLEE] WIFE:

(a)   The marital home at Grouse Hill, Waverly, Lackawanna County, Pennsylvania, together with all furnishings, appliances and personalty therein and together with assumption of the first Mortgage and home equity loan in favor of the Northeastern Bank of Pennsylvania. [Appellee] to make such arrangements as necessary to hold the [Appellant] harmless for any sums due to the said Northeastern and home equity loan.   It is the Master's understanding that the balance due on said debts total approximately $183,000.00:

| | |
|---|---|
| —value of home | $245,000.00 |
| —value of contents | $   7,000.00 |
| | $252,000.00 |
| Less obligations: | 183,000.00 |
| NET: | $ 69,000.00 |

(b)   1988 Audi Quatro vehicle — value $15,500
(c)   IRA in [Appellee's] name — value $ 1,022
(d)   Prudential Bache account — value $2,319.38

(e) In addition to the aforesaid first Mortgage and home equity loan, the [appellee] wife is charged with the following debts and will hold the [appellant] harmless for all sums due on said debts:

(i) O.K. Tires — $592.00
(ii) Mermelstein's — $ 97.00
(iii) Dr. David Oven — $170.00
(iv) Costa's Drugs — $172.16

After deducting the liabilities from the value of the assets distributed in kind to the [appellee], the Master arrives at a sum of $86,810.22.

TO [APPELLANT] HUSBAND:

| | | | |
|---|---|---|---|
| (a) | Lackawanna Medical Group stock value | — | $ 34,600.00 |
| (b) | Lackawanna Medical Group 401(k) value | — | $ 46,693.00 |
| (c) | Lackawanna Med. Group Pension value | — | $ 16,457.00 |
| (d) | 1982 Subaru and 1987 BMW value | — | $ 13,100.00 |
| (e) | Prutex I & II value | — | $ 10,000.00 |
| (f) | Legg Mason account value | — | $ 958.00 |
| (g) | IRA in [Appellant's] name value | — | $ 7,433.00 |
| | | TOTAL: — | $129,241.00 |

(h) [Appellant] husband is charged with the payment of the following debts and will hold [Appellee] wife harmless for all sums due on said debts:

| | | | |
|---|---|---|---|
| (i) | Northeastern Bank of Pennsylvania credit line | — | $19,000.00 |
| (ii) | Penn Security Master Card | — | 1,628.75 |
| (iii) | Penn Security Visa | — | 1,628.75 |
| (iv) | Northeastern Bank of Pennsylvania Master Card | — | 5,965.00 |
| (v) | Temple University | — | 870.00 |
| (vi) | T. Harasym loan | — | 6,000.00 |
| (vii) | E.L. Harasym loan | — | 5,000.00 |
| (viii) | Guido Boriosi, M.D. | — | 530.00 |
| (ix) | Encyclopedia Britannica | — | 2,000.00 |
| (x) | Clarks Green Garage | — | 150.14 |
| | | TOTAL: | $42,813.25 |

After deducting liabilities from the value of the assets distributed in kind to the [appellant], the Master arrives at a sum of $86,427.75. As previously noted the [appellant] has requested that the Master find that the debt due to the United States Government of $10,000.00 is a marital debt and it is the conclusion of the Master that such debt is

not in fact marital.[1]

---

Report of Master, January 3, 1991, pp. 71–2.[2]

Cross-exceptions to the Master's report were filed, the appellee contesting the Master's recommendations with regard to alimony pendente lite, counsel fees and expenses, and, the appellant contesting the Master's recommendations involving equitable distribution and alimony. The trial court denied appellee's petition for alimony pendente lite; however, it concluded that appellant should pay appellee's counsel fees and expenses. Additionally, the trial court found no error in the Master's distribution of the marital property, but, adjusted appellee's alimony award to $2,000.00 for a period of four years.[3] The Master's report was adopted in all other respects.

Appellant raises three issues on appeal:

I. Was the plan of equitable distribution of a minority interest in closely held corporate stock a "buy out" at a value not realizable and "accrued" debt a marital estate obligation?

II. Does an award of alimony fail when it imposes on a supporting spouse the duty to see that the dependent spouse's lifestyle remains unchanged from previous practices?

1.  This $10,000.00 debt due to the United States Government represents a settlement with the U.S. Attorney's office with regard to allegations of Medicare fraud.

2.  The master also recommended that appellee's petition for alimony pendente lite as well as her claim for counsel fees and expenses be denied.

3.  We note that the trial court, in its opinion of August 2, 1991, awarded alimony to appellee in the amount of $2,000.00 for a period of five years. However, in its order and decree of the same date the alimony award is for a period of 48 months. Neither appellant nor appellee dispute that the award is for 48 months, and we will accept that as the proper period.

III. May counsel fees be awarded where neither actual financial need or legal necessity has not [sic] been shown? Brief for appellant, p. 11.

■ Our scope of review in equitable distribution matters is limited. An award of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Berrington v. Berrington,* 409 Pa.Super. 355, 361, 598 A.2d 31, 34 (1991) *citing Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983). An abuse of discretion "is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that [an] appellate court is of [the] opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one that is clearly against logic and [the] effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law." *Berrington,* 598 A.2d at 34 *quoting Myers v. Myers,* 405 Pa.Super. 290, 592 A.2d 339 (1991).

■ Appellant's first issue raises two separate questions. He first argues that the court improperly valued stock which he owns in the Lackawanna Medical Group through his employment with that corporation. Appellant points out that he is no longer employed by the Lackawanna Medical Group and contends that he left because of wage reductions and its inability to pay its employees. He argues that because of the corporation's "serious" financial difficulties and outstanding lawsuits, the value of his stock is worthless.

This issue was briefly raised in appellant's exceptions to the Master's report as part of his objection to the equitable distribution scheme. The trial court reviewed the record and considered all of the factors set forth in 23 Pa.C.S.A. § 3502(a)(1) – (11), (formerly 23 P.S. § 401(d)(1) – (11)), and concluded that it would not disturb the Master's recommenda-

tions with regard to the equitable distribution of the marital property. The court did not specifically discuss whether the valuation of appellant's stock was proper nor was it necessary for the court to do so. Appellant has offered no evidence that his stock is worthless. There is no dispute that appellant's stock is marital property and, therefore, subject to equitable distribution. The value was assessed by the Master in accordance with the stockholder's agreement as our supreme court directed in *McCabe v. McCabe*, 525 Pa. 25, 575 A.2d 87 (1990) (Partnership agreement governing appellant's law firm is preeminent factor in valuing a partner's rights and method set forth in agreement for determining realizable value of partner's share is controlling.) If it is in fact true that it will be difficult for appellant to obtain the value of his stock, we are still unpersuaded that such difficulty renders the stock worthless.[4]

■ Appellant also argues that the marital estate should have been reduced by the amount of $10,000.00 which represents a settlement by him with the U.S. government. The U.S. Attorney's office filed an action against appellant, among others, alleging Medicare fraud and conspiracy. Appellant asserts that because appellee shared in the benefits of the income generated by his billing through Lackawanna Medical

4. Appellant also argues that the trial court was required to consider an "in kind" distribution of the stock as well as a "buy out" remedy. This argument was never raised in his exceptions to the Masters report. Appellant has maintained throughout the proceedings that the stock in question has no value because he will be unable to receive its value without bringing suit against the corporation. He now argues that ·where there is difficulty valuing closely held stock, an in kind distribution is more appropriate, citing *Ryan v. Ryan*, 528 Pa. 186, 596 A.2d 140 (1991) in support of this proposition. We disagree with this reading of *Ryan*. In that case our supreme court stated only that it was appropriate for the trial court to consider both methods of distribution but did not show any preference for either method.

Additionally, we fail to understand appellant's assertion that because he may have difficulty redeeming the value of his stock, no value can be placed on it. The value of the stock was computed by using the formula agreed upon by the parties and as provided in the stockholder's agreement. We see absolutely no reason why it would be more appropriate to divide ownership of the stock between the parties.

Group, that she is likewise liable for such debt arising out of this settlement obligation. We disagree.

The Master stated in his report that the "aforesaid $10,-000.00 debt is not a marital debt and in fact is a settlement of a claim against the Plaintiff, Eugene Harasym, for fraud and conspiracy he conducted against the United States Government and should not be considered marital even though the [appellee] may have unwittingly and unknowingly been a peripheral beneficiary of the acts of her husband." Master's Report, January 3, 1991, p. 67. Appellant presents no evidence that the $10,000.00 settlement represents the over-billed amount by which he and appellee may have benefited. That amount appellant agreed to pay could have been in large part a penalty and may have no relation to any amount which may have inured to appellee. Additionally, appellee played no part in the settlement agreed to by appellant. We do not find it improper that the $10,000.00 settlement by appellant, agreed to by him in connection with allegations of Medicare fraud, was not considered a marital debt.

■ Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Zollars v. Zollars,* 397 Pa.Super. 204, 579 A.2d 1328 (1990) *allocatur denied* 527 Pa. 603, 589 A.2d 693. The legislative intent of the Divorce Code is to "[e]ffectuate economic justice between parties who are divorced or separated and ... insure a fair and just determination and settlement of their property rights." 23 Pa.C.S.A. § 3102(a)(6). We are satisfied that all of the appropriate factors were considered by the Master and the trial court and find no abuse of discretion in the distribution of marital property.

■ Appellant's second issue states that the award of alimony imposes upon him the duty to support appellee in a lifestyle which is unchanged from that which she enjoyed during marriage. The standard of review with regard to the issue of

alimony is whether the trial court abused its discretion. *Adelstein v. Adelstein*, 381 Pa.Super. 221, 553 A.2d 436 (1989). "In determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage." *Edelstein v. Edelstein*, 399 Pa.Super. 536, 539, 582 A.2d 1074, 1076 (1990); 23 Pa.C.S.A. § 3701(b).

It was the Master's recommendation that appellant pay to appellee alimony in the amount of $1,300.00 for a period of 10 years. The trial court found this to be excessive noting that the purpose of alimony is rehabilitative in nature and to effectuate economic justice between the parties. It was stated in the trial court's review of this issue, that appellee was back in the workforce with a "moderately well-paying job" and that she was awarded the marital residence in the equitable distribution scheme. It was also considered that appellant's earning potential is much greater than that of appellee.[5] The trial court felt that some alimony was appropriate and modified the Master's recommendation with regard to alimony to the amount of $2,000.00 per month for a period of 48 months.

We find no evidence that alimony was awarded in this case with the purpose of maintaining appellee's pre-divorce lifestyle.[6] Clearly, the record shows that her lifestyle has and will continue to change. While we recognize that appellant will suffer some hardship and his standard of living will be somewhat reduced for a time, we cannot say that the trial

5. Appellant earns approximately $139,000.00 per year as a physician and appellee earns approximately $22,000.00 per year as a speech therapist in the public school system. Appellee is not employed in a permanent position at the present time and is the custodial parent for two young daughters.

6. We also find no evidence that the award of alimony was punitory or that appellant's extra-marital relationship was given great weight, if any, by either the Master or the trial court in their determinations.

court abused its discretion in the amount or duration of the alimony award.

The final issue raised by appellant is whether the trial court erred in its award of over $10,000.00 in counsel fees to appellee. Appellant argues that neither financial need nor legal necessity has been shown which would warrant such an award.

■ Our standard of review with regard to an award of counsel fees is a narrow one, such standard being an abuse of discretion by the trial court. *Kohl v. Kohl,* 387 Pa.Super. 367, 372, 564 A.2d 222, 225 (1989) *affirmed* 526 Pa. 263, 585 A.2d 463 (1991) *citing Adelstein v. Adelstein,* 381 Pa.Super. 221, 553 A.2d 436 (1989). Counsel fees are awarded only upon a showing of actual need. "Counsel fees are appropriate when necessary to put the parties 'on par' in defending their rights or in allowing an action for divorce." *Id.* The purpose of such an award is to enable the dependent spouse to maintain the action without being placed at a financial disadvantage. *Sutliff v. Sutliff,* 326 Pa.Super. 496, 474 A.2d 599, 600 (1984).

■ In his report, the Master recommended that appellee's claim for alimony pendente lite and counsel fees be denied and her claim for costs and expenses be granted. The trial court agreed with the Master's recommendation with regard to alimony pendente lite, but disagreed with his recommendation with regard to counsel fees, granting appellee's request. In its opinion, the trial court noted that appellee had ample funds to support herself and maintain this action while she received spousal support payments and a monthly contribution from appellant toward the mortgage. Thus a denial of alimony pendente lite was appropriate. The trial court further observed that such support payments have ceased upon the granting of the divorce. Appellee, however, will be receiving alimony which amount exceeds that of the spousal support. While we find some inconsistency in the trial court's reasoning, the large disparity in the income of both parties was considered as was the Master's recommendation that appellant

pay costs and expenses with regard to the Master's hearings.[7] In comparing the gross income of the two parties along with their expenses, appellee is certainly in a disadvantageous position and we are unable to say that the trial court abused its discretion in its award of counsel fees.

Order affirmed.

---

**7.** The trial court also stated: "It is clear that [appellee's] counsel's efforts in trying to determine the value of [appellant's] stock interest in Lackawanna Medical Group, P.C. were skillfully done and necessitated by [appellant's] own conduct." Trial court opinion, August 2, 1991, p. 3.