J-S07031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAMES CUMMINS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WANDA CUMMINS | |
| Appellee | No. 1071 MDA 2014 |

Appeal from the Order Entered May 23, 2014
In the Court of Common Pleas of Centre County
Civil Division at No(s): 10-0445

BEFORE: BENDER, P.J.E., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.: **FILED APRIL 22, 2015**

James Cummins (Husband) appeals from the order of equitable distribution entered on May 23, 2014, in the Court of Common Pleas of Centre County, following a divorce decree entered on February 25, 2014. On appeal, Husband raises a single issue for our review:

> Whether the [trial court] erred as a matter of law and/or abused its discretion in failing to include certain federal and state tax liabilities otherwise acquired during the time of marriage in the marital estate – and by failing to apportion that debt [between] the parties to the divorce for the purpose of equitable distribution?

Husband's Brief at 7. Based upon the following, we affirm.

Husband and appellee, Wanda Cummins (Wife) were married on March 23, 2003. This is the second marriage of Wife and the third marriage of Husband. Husband is 48 years of age and Wife is 59 years of age. Wife has

an adult son by her previous marriage. The parties separated in January, 2010. On February 2, 2010, Husband filed a complaint in divorce, including a claim for equitable distribution.

On February 25, 2014, the trial court conducted a hearing of Husband's equitable distribution claim, and the parties stipulated to the entry of a divorce decree. On the same date, the trial court entered an order bifurcating the divorce from the equitable distribution, entering a final divorce decree, and retaining jurisdiction over the unresolved issue of equitable distribution.

The trial court issued its opinion and order on May 23, 2014, deciding the issue of equitable distribution. For purposes of background, we quote the trial court's May 23, 2014 discussion of the relevant factors set forth in 23 Pa.C.S. § 3502, regarding the distribution of marital property, in part:

- **Liabilities and needs of each party.**

Husband is in debt. Husband is indebted to the IRS in the amount of $98,000.00 and the Pennsylvania Department of Revenue in the amount of $19,379.81. Husband is indebted to a doctor in the amount of $34,000.00. The parties also incurred marital liabilities in Husband's name for a Sears credit card with a balance of $1,600.00; a First Energy electric bill with a balance of $1,339.55; an AT&T phone bill with a balance of $589.89 and a Pennsylvania American water bill with a balance of $600.00. Husband also owes $2,150.00 to Jamey Myers as a result of a judgment entered against Husband involving the use of the Little Restaurant property.

\*\*\*\*

- 2 -

- **The sources of income of both parties, including, but not limited to, medical, retirement, insurance, and other benefits.**

During the course of the marriage, Husband was self-employed as a truck driver and operator, earning approximately $100,000/year. He is now unemployed and receives workers' compensation in the amount of approximately $2,547.00 gross per month. He received his G.E.D. in 1983 and worked as a truck driver throughout the marriage. Husband testified that he cannot work due to his back injury and will not be able to do so in the foreseeable future. He does not have health insurance but has approximately $400.00 in a post-marital 401K plan.

During the course of the marriage, Wife managed the Philipsburg Dollar General, earning approximately $600/week. Wife has a high school education, completed real estate school, has a CNA certification, and is a licensed hair stylist, but the parties agree that she is also unable to work in the foreseeable future due to her back injury. She is now unemployed and receives SSDI in the amount of $865/month. She has health insurance but does not have any retirement savings.

- **The contribution or dissipation of each party in the acquisition, preservation, depreciation, or appreciation of the marital property, including the contribution of a party as homemaker.**

During the marriage the parties worked, but they lived beyond their means and were unable to manage their finances. The parties purchased a marital home in Rush Township, Centre County, on October 13, 2003 for the sum of $130,000.00 and had a mortgage against the property in the amount of $144,500.00. Prior to separation, Wife used $18,000.00, representing her lump sum SSDI payment, toward the mortgage. The parties were at significant risk of losing their marital residence approximately one year prior to separation, and the bank eventually did foreclose on the same in 2010. Husband's tractor and trailer, which he relied on to make his living, were repossessed due to failure to pay loans. At the time of separation, the parties were also behind on their utility bills.

- **The value of the property set apart to each party.**

The Little Restaurant property is the most significant asset that the parties still own. The Court finds that this property is marital property ….

The property must be listed for sale with a qualified real estate agent and any proceeds must be split equitably by the parties. The parties purchased the property from Scott and Janet Finnegan on March 8, 2005, for the sum of $40,000.00 with a mortgage in the amount of $54,500.00. When the parties separated in 2010, there was a balance of $12,000.00 owed to the Finnegans. Husband paid the value of the mortgage down to $200.00 as of the time of the hearing. Accordingly, Husband is entitled to the first $11,800.00 of the proceeds of the sale of the Little Restaurant property. The parties shall split the remaining proceeds with Wife receiving 50% and Husband receiving 50%.

The parties shall keep the personal property in each party's possession. The parties testified that the value of these possessions is approximately $1,500.00 each.

… The Court finds that although certain utility bills are listed in Husband's name alone, they are all marital debts. The Court finds that the tax liens against Husband and the amount owed to his doctor are his debt alone. Taking into account Husband's age, his current income which is greater than that of Wife, and his earning potential, as well as his considerable debt obligations, the Court distributes the remaining utility debts as follows: [$2,789.99 to Husband and $1,339.55 to Wife].

*See* Trial Court Opinion, 5/23/2014, at 2, 3–6 (emphasis added). The court

ordered:

1. Husband must list for sale the property known as the Little Restaurant property with a qualified real estate agent. Husband is entitled to the first $11,800.00 of the proceeds of the sale of the Little Restaurant property. The parties shall split the remaining proceeds with Wife receiving 50% and Husband receiving 50%.

2. Husband is solely responsible for the taxes he owes to the IRS and the Pennsylvania Department of Revenue.

3. Husband is solely responsible for the Centre County judgment in the amount of $2,150.00.

4. The parties shall keep the personal property in each party's possession.

5. The marital debt, which has a value of $4,129.54, shall be distributed in a 68/32 manner, with 68%, or $2,789.99, being the sole responsibility of Husband, and 32%, or $1,339.55, being the sole responsibility of Wife. …

Order, 5/23/2014.

This appeal by Husband timely followed.[1]

Our standard of review in equitable distribution is well settled:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights."

**Biese v. Biese**, 979 A.2d 892, 895 (Pa. Super. 2009) (citations omitted).

---

[1] Husband timely complied with the order of the trial court to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal.

Husband argues the trial court erred in its treatment of Husband's federal and state tax debts by not including those liabilities in the marital estate. Husband maintains the federal and state tax liability that he accrued during the marriage should have been included in the marital estate.[2]

The trial court rejected Husband's argument, stating:

> The Court respectfully suggests that it properly excluded [Husband's] federal and state tax liability from the marital estate. The Court found that the taxes, which were solely in [Husband's] name, were non-marital because they related to his business and he was not forthcoming with his wife about these debts. [Husband] was an independent owner and operator of his truck and trailer and incurred tax liability in that business. [Husband's] truck and trailer were repossessed due to his failure to pay loans and income tax. The Court properly made a credibility determination based on the evidence that these taxes are solely [Husband's] responsibility.

Trial Court Rule 1925(a) Opinion, 7/29/2014, at 1–2.

Husband relies on the case of **Duff v. Duff**, 507 A.2d 371 (Pa. 1986), for the proposition that "[t]ax liability that accrues during the marriage and prior to separation is properly included in the marital estate for purposes of equitable distribution." Husband's Brief at 14. Husband, contending the tax liability is marital property, cites **Hicks v. Kubit**, 759 A.2d 202, 204 (Pa. Super. 2000), in support of his argument that "[w]homever is the primary beneficiary of the indebtedness determines whether the debt should be apportioned between the parties." Husband's Brief at 16. Husband claims

---

[2] Husband calculates the amount of tax liability at issue as $77,845.12, after deducting his pre-marital tax liability. **See** Husband's Brief at 18.

"[t]he 'primary beneficiary' of the income withheld from tax payment was the marriage itself – not the Husband alone." *Id*. at 18.

The record establishes that the tax liability that Husband claims should be characterized as marital debt arose upon Husband's filing of separate income tax returns during the marriage. This tax liability related to the income Husband received through his self-employment as a truck driver and operator. N.T., 2/25/2014, at 14. Upon review, we find no error in the trial court's determination that the tax liability is not a marital debt.

In *Duff, supra*, the parties filed a joint tax return prepared by husband. The husband failed to properly treat the gains realized from the exercise of stock options. As a result, following the parties' separation, the IRS assessed additional tax liability of $13,517.43 plus penalty and interest. The husband argued on appeal that the trial court erred in not including this tax liability in the marital estate. Our Supreme Court found "the $13,517.43 tax assessment is simply an addition to the same tax obligation held to be a joint liability" and therefore determined that "the assessment should have also been treated as a joint liability to be included in computation of the marital estate." 507 A.2d at 373. Here, however, in contrast to *Duff*, the tax liability at issue arose from Husband's separately filed tax returns. Additionally, this Court, in *Hicks* instructed that the circumstances

surrounding the acquisition of the debts are to be considered,[3] and here the tax liability was incurred solely by Husband who was not candid with Wife, who was not required to sign his returns.

We find this case analogous to **Harasym v. Harasym**, 614 A.2d 742 (Pa. Super. 1992). In **Harasym**, the physician/husband argued that the marital estate should have been reduced by $10,000 which amount represented a settlement by him with the federal government. **Id.** at 746. The United States Attorney's office filed an action against the physician/husband alleging Medicare fraud and conspiracy. **Id.** Husband argued that since his wife shared in the benefits of the income generated by his billing, she was likewise liable for such debt arising out of the settlement obligation. **Id.** This Court disagreed with husband's argument and concluded the debt was non-marital.

The **Harasym** court found that the $10,000 debt was not a marital debt and was, in fact, a settlement of a claim against the husband/physician for fraud and conspiracy. **Id.** The court further found that the debt should not be considered marital even though wife may have unwittingly and unknowingly been a peripheral beneficiary of the acts of her husband. **Id.** Additionally, the court noted husband presented no evidence that the $10,000 settlement represented the over-billed amount by which he and

---

[3] **See Hicks**, 758 A.2d at 205.

wife may have benefited. ***Id.*** Finally, the court observed that wife played no part in the settlement agreed to by husband.

Here, like ***Harasym***, Wife may have unwittingly and unknowingly been a peripheral beneficiary of the acts of Husband, but Husband offered no specific evidence that the unpaid tax amounts resulted in monies used entirely for the parties' benefit.[4]  Furthermore, the trial court, as finder of

---

[4] The following exchange took place during cross examination by Wife's counsel concerning the tax liens:

Q:  Can you look at Exhibit 8[?]

A:  Yes.

Q:  It's a notice of tax lien?

A:  Yes.

Q:  It looks to me like that's only in your name; is that correct?

A:  It's only what?

Q:  It's only in your name?

A:  Oh, yeah.  We filed separately.

Q:  You did file your taxes separately?

A:  That is correct.

Q:  So for all the years you were married?

A:  All the years we were married we filed separately.  That way she got money back.

*(Footnote Continued Next Page)*

fact, was free to make a credibility determination that even with Husband not paying his tax liability, the unpaid amount was not sufficient to make Wife liable for Husband's tax liabilities, given Wife's testimony she worked and paid taxes, paid Husband's health insurance when she worked, contributed her paycheck to the household bills, and used her $18,000.00 disability insurance award for the mortgage when the parties fell behind in the payments. **_See Sternlicht v. Sternlicht_**, 822 A.2d 732, 742 (Pa. Super. 2003), _affirmed_, 876 A.2d 904 (Pa. 2005) (It is within the province of the trial court to weigh the evidence and decide credibility of witnesses and this Court will not reverse those determinations so long as they are supported by the evidence.). Accordingly, we affirm.

_(Footnote Continued)_ ———————

Q: So Wanda was not responsible for the incorrect filing of your taxes?

A: She's not responsible for the taxes per se, but she got to use the money from the taxes that were not paid. It was marital assets, in my eyes.

N.T., 2/25/2014, at 70–71.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date: 4/22/2015