J-A12015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TAMARA SWEENEY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| THOMAS J. SWEENEY, | |
| Appellee | No. 2164 EDA 2015 |

Appeal from the Decree June 18, 2015
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s): 2012-11558

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED AUGUST 30, 2016**

Tamara Sweeney (Wife) appeals *pro se*[1] from the June 18, 2015 decree in divorce from Thomas J. Sweeney (Husband) and the equitable distribution order incorporated therein.  Wife raises numerous issues concerning the equitable distribution of the marital estate and the alimony award.  After review, we affirm.

The trial court set forth the following background information in its equitable distribution decision:

> The parties were married on July 10, 1993, separated on April 22, 2012, and Wife filed a Divorce Complaint on May 7,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although Wife was represented by four different attorneys during the equitable distribution proceedings, she is representing herself in connection with this appeal.

2012. Four children were born of this marriage[.][2] … At [the] time of hearing, Wife was 47 years of age and Husband was 52 years of age. By Stipulation dated January 14, 2013, Husband resides exclusively in the marital residence with the children at 173 Buckwalter Road, Royersford, Pennsylvania. Wife's address, as reflected on the docket entries, is 1204 Red Rock Road, Linfield, Pennsylvania, although her post-trial memorandum indicates her present address to be 131 Prospect, Unit 107, Phoenixville, Pennsylvania. The parties equally share custody of [the youngest son], and Husband has primary custody of [the daughter]. [The two oldest sons] are over 18. [One] attends the University of Alabama and lives with Father when not in school, and [the other] should have graduated from high school this month, lives with Father, and also plans to attend the University of Alabama.

Both parties had graduated from college before the marriage, with Bachelor Degrees. No testimony was presented on either side which would reflect that either party suffers from any physical or mental health issue which would keep either one of them from gainful employment. At the time of hearing, Wife was employed, and had been since October 6, 2014, at Private Jet Services, Inc. as a hostess for college basketball teams, and testified that she makes $1,000 per week in that capacity. A Support Order, entered on May 10, 2013, indicates Wife's net income was $3,214.06 per month. Said Order further reflects (at that point in time) that she had last worked at B.F.I. for 7½ months and earned $31,643.96 gross. Further, said Order indicates that Wife voluntarily resigned from that position and, at the time of hearing, worked for another company where she earned only commission and had not earned anything to the date of the support hearing. Her highest paying job, between 2004 and 2008 was for Yellowbook, where she earned as much as $90,000 in one year. Husband is self-employed in a business named RoofingProjects.com, LLC and had previously been involved in a business called Construction Marketplace, LLC, incorporated by his mother. He further indicated that Construction Marketplace, LLC no longer exists. It appears

_____

[2] The parties' oldest son was born in November of 1994, a second son was born in June of 1996, a daughter was born in December of 1998, and the youngest child, a son, was born in September of 2000.

(although no direct documentary proof was introduced) that Construction Marketplace "morphed" into the newer business, Roofing Project, LLC. The Support Order of May 10, 2013, indicates that Husband's net monthly income was $16,137.56. It should be noted that, although Exceptions were filed to this particular Support Order, prior to hearing by the undersigned, the Exceptions were withdrawn and the Order continued with only issues of credits to be resolved by the Court as part of Equitable Distribution.

During the course of litigation, Husband paid $1,782 for psychological evaluations, $500 of which was Wife's share, and a total of about $12,000 for family counseling.

Trial Court Equitable Distribution Opinion (TCEDO), 6/18/15, at 1-2.

The trial court then reviewed the marital assets, which include the fair market value of the marital residence at $630,000, but which has an outstanding mortgage balance of $506,000. With regard to retirement accounts, Husband has none. Although Wife acknowledged she has such accounts, no evidence was presented as to their value. Additionally, the court found that Husband's business is a marital asset, but determined that it had "no value subject to equitable distribution," because the "goodwill value of the business is based solely on Husband." *Id.* at 3, 4. The court also discussed the marital debt, stating:

For many years, Husband failed to pay any taxes, and owes I.R.S. over $860,000 total in taxes, interest and penalties. Husband is trying to negotiate a reduction of this debt to I.R.S., and at the present time, it is unknown exactly what Husband's liability will be after said negotiations are complete. He has already offered $55,000 in compromise for this debt, which offer has been rejected by I.R.S. Additionally, he has paid over $50,000 to Pennsylvania Department of Revenue between 2013 and 2014 for unpaid state taxes.

*Id.* at 4. Thereafter, the court reviewed both the equitable distribution factors outlined at 23 Pa.C.S. § 3502(a), and the alimony factors found at 23 Pa.C.S. § 3701(b).

On June 18, 2015, the court issued its equitable distribution order, directing the sale of the marital residence following the youngest child's graduation from high school, with Husband to continue to pay the mortgage, taxes and insurance until the property is sold. The parties would then share the proceeds from the sale with Wife receiving 65% of the proceeds and Husband 35%. Wife was also directed to pay Husband from her share of the proceeds "one-tenth of any final tax liability incurred during the marriage." *Id.* at 10. Husband was awarded all interest in the business and would be responsible for any business debts or liabilities. The court also awarded Wife $2500 per month in alimony until the time the youngest child graduates from high school.

Wife appealed from the June 18, 2015 decree/order, and now raises the following issues for our review:

> [1.] Whether the court can make and render a fair and equitable property distribution determination absent complete discovery as required under the provisions of 23 Pa.C.S. § 3501 et seq.; Pa.R.C.P. 1920.33; Fed. R.Civ.P. 26(b)(1); Richlin v. Sigma Design West, Ltd., 88 F.R.D. 634, 637 (E.D. Cal. 1980)[?]
>
> [2.] Whether the court is allowed to assign a zero value to an existing, on-going and profitable business[?]
>
> [3.] Whether the court can determine a reasonable and unbiased alimony award absent full and fair financial disclosure[?]

[4.] Whether the court, aware of financial inconsistencies and financial falsehoods, can use fabricated data in rendering sound decrees[?]

[5.] Whether the court is allowed to overlook an admitted claim of forgery that was used to deceive [Wife] as to the true financial condition of the parties[?]

[6.] Whether the court is allowed to ignore evidence of duress and its impact on adequate representation and equal treatment under the law[?]

Wife's brief at 9-10 (citations appended to issues 2 through 6 have been omitted).

Generally, when addressing issues concerning equitable distribution, we are guided by the following:

"Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." **Harasym v. Harasym**, 418 Pa. Super. 486, 614 A.2d 742, 746 (Pa. Super. 1992). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." **Zollars v. Zollars**, 397 Pa. Super. 204, 579 A.2d 1328, 1330 (Pa. Super. 1990), *appeal denied*, 527 Pa. 603, 589 A.2d 693 (1991).

Pursuant to 23 Pa.C.S.A. § 3502(a), when fashioning equitable distribution awards, the trial court must consider: the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation or appreciation [of] marital property[;] value of each party's separate property[;] standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children. 23 Pa.C.S.A. § 3502(a)(1-11). The weight to be given to these statutory

factors depends on the facts of each case and is within the court's discretion. *Gaydos v. Gaydos*, 693 A.2d 1368, 1376 (Pa. Super. 1997) (*en banc*).

*Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa. Super. 2004). "Furthermore, the trial court has 'the authority to divide the award as the equities presented in the particular case may require.'" *Id.* We also recognize that when reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of the property rights." *Hayward v. Hayward*, 868 A.2d 554, 559 (Pa. Super. 2005). Moreover, "[t]he law is … well settled that the trial court can accept all, some or none of the submitted testimony in determining the value of marital property." *Isralsky v. Isralsky*, 824 A.2d 1178, 1185 (Pa. Super. 2003).

With regard to Wife's first issue, she claims that discovery was incomplete because Husband failed to timely respond and that the documents he eventually provided were prepared to mislead her. Wife further claims that the court abused its discretion in concluding that the parties had been given sufficient time to complete discovery. Wife also appears to blame her attorneys for resigning at inopportune times, leaving her "improperly represented." Wife's brief at 29. She argues that although the court granted an extension to complete discovery, a further delay was denied, thus, "tacitly favoring [Husband] in the matter of [e]quitable

[d]istribution." **Id.** Additionally, Wife asserts that the court's refusal to grant more time for discovery violated 23 Pa.C.S. § 3505(b), which requires the parties to file inventories. Also, with reliance on **Hein v. Hein**, 717 A.2d 1053 (Pa. Super. 1998), she contends that Husband should have been sanctioned. **See Hein**, 717 A.2d at 1056 (stating the imposition of discovery sanctions is within the discretion of the trial court).

The trial court provided an extensive discussion concerning this issue, noting a number of conferences scheduled and held by the court with counsel. The court also cited the order it issued on October 9, 2014, setting out the final discovery procedure and the documents each party was required to bring to the hearing scheduled for January 21, 2015. The court also cited its order, dated April 8, 2014, granting the request by Wife for the appointment of a forensic accountant to examine and value Husband's business and earning capacity. However, Wife never hired a forensic accountant. The court also noted that by the time the hearing was held on January 21, 2015, the "case had been pending for about 32 months." Trial Court's Rule 1925(a) Opinion (TCO), 9/10/15, at 8. Thus, the court concluded that ample time had been provided to complete discovery.

We agree and recognize that the court found Wife herself had not complied with some of the discovery requests directed to her. Simply stated, more than sufficient time had elapsed. Additionally, Wife's reliance on **Hein** is misplaced in that that case concerns the appropriateness of

discovery sanctions imposed, not whether sanctions should be imposed in the first instance. Accordingly, we conclude that the court did not abuse its discretion by not further extending discovery and in not sanctioning Husband. Wife's first issue is without merit.

The second issue raised by Wife concerns the valuation of Husband's business. She argues that the court erred by assigning it a zero value for distribution purposes. Wife relies on *Verholek v. Verholek*, 741 A.2d 792 (Pa. Super. 1999), *Litmans v Litmans*, 673 A.2d 382 (Pa. Super. 1996), and *Johnson v. Johnson*, 529 A.2d 1123 (Pa. Super. 1987), for the proposition "that a business valuation must be conducted when it impacts on the matter of equitable distribution…." Wife's brief at 32. Essentially, Wife claims that because the court did not consider the section 3502 equitable distribution factors, the distribution plan must be set aside. She further argues that the court failed to weigh the evidence and make credibility determinations or that it made them in favor of Husband. Wife also contends that in valuing the business, the court overlooked her contribution and claims that merely because Husband is the breadwinner he was not entitled to more favorable treatment. Underlying these allegations, Wife believes that the court was biased and that its actions were "demeaning and insulting." Wife's brief at 35.

The trial court's response to this argument centers on its determination that Husband's "business ha[s] no value for [Equitable

Distribution] purposes[,]" because "[a]ny value is tied directly to [Husband]." TCO at 10. Specifically, the court stated:

> [Husband] presented testimony, which we find credible, that the business depends on him as principal. The business has no value in the event that [Husband] becomes separated from the business. "Goodwill value which intrinsically ties to the attributes and skills of certain individuals is not subject to equitable distribution because the value thereof does not survive the disassociation of those individuals from the business." *Baker v. Baker*, 861 A.2d 298, 302 (Pa. Super. 2004) (citation omitted).

*Id.* at 10-11. The trial court further explained that Wife had been given more than enough time to complete any discovery she wished in regard to Husband's business including hiring a forensic accountant, which Wife chose not to do. Moreover, the court found that no "formal business evaluation" was completed. *Id.* at 11. Therefore, based upon the record before it, the court concluded that the business had no value for equitable distribution purposes and Wife has not convinced us otherwise. Thus, Wife's second issue does not provide her with relief.

Wife's next issue relates to the court's award of alimony until the time the parties' youngest son graduates from high school Wife claims that the court erred by substantially reducing the alimony award from the amount she received as alimony *pendente lite* (APL). She claims that the purpose of alimony is to allow a former spouse to live the lifestyle she lived during the marriage, and that her earning capacity has been affected by her contribution to the family and to Husband's business. Moreover, Wife argues that because evidence in the record reveals that Husband earns about

$100,000 per month, the reduction of the APL amount down to a $2500 payment per month does not do economic justice between the parties. ***See*** Wife's brief at 39.[3]

We conduct our review of this issue according to the following standard:

> The role of an appellate court in reviewing alimony orders is limited; we review only to determine whether there has been an error of law or abuse of discretion by the trial court. Absent an abuse of discretion or insufficient evidence to sustain the support order, this Court will not interfere with the broad discretion afforded the trial court.

***Smith v. Smith***, 904 A.2d 15, 20 (Pa. Super. 2006). Likewise:

> The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. In determining the nature, amount, duration and manner of payment of alimony, the court must consider all relevant factors, including those statutorily prescribed for at 23 Pa.C.S.A. § 3701. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.

***Isralsky***, [824 A.2d at 1188].

***Dalrymple v. Kilishek***, 920 A.2d 1275, 1278-79 (Pa. Super. 2007).

_____

[3] Wife does not provide a citation to the record to support the amount of income she claims Husband earns per month. Rather, we note the court found that pursuant to the support order, Husband's net monthly income was $16,137.56.

- 10 -

In arriving at its conclusion about alimony, the court noted Husband's mismanagement of the business, in particular his failure to pay taxes. However, the court also pointed out that the parties rented a house at the shore for a number of summers that cost $38,000 per year. Thus, the court concluded that "[b]oth parties benefitted from a comfortable lifestyle as a result of [Husband's] failure to pay taxes." TCO at 5. Additionally, the court stated:

> [Wife] argues that she cannot "live off of alimony." The record demonstrates otherwise. In deciding that an award of alimony was appropriate until the parties' youngest child graduates from high school, we carefully reviewed each of the alimony factors.
>
> [Wife] has a college degree. She was only 47 years old at the time of hearing on 1/21/15. Her earnings history reflects that at one point during the parties' marriage, she earned approximately $90,000/year in a sales position with Yellowbook (sometime during the period 2004-2008). [Wife] does not have any serious health complications that would prevent her from maintaining gainful employment.

TCO at 12-13.

Following our review, we conclude that the trial court adequately examined the specific facts of this case and properly analyzed the appropriate statutory factors in determining Wife's reasonable needs and Husband's ability to pay. The court's findings and conclusions are not in error. The record supports the findings and, therefore, we conclude that the court did not abuse its discretion in its award of alimony to Wife.

Wife's next two issues are directed at the trial court's credibility determination in connection with Husband's testimony and specifically

relating to Husband's signing of Wife's name on "tax submissions to the IRS." Wife's brief at 43. Wife suggests that Husband's action was a forgery and if not considered a crime, it should have at a minimum impacted the court's credibility determinations concerning Husband's testimony.

In response to this issue, the court's opinion that set forth the equitable distribution award explained:

> Husband's signature of Wife's name onto tax returns which effectively removed her liability from the tax debt is not a forgery in light of Wife's indication to Husband that he should remove her name from this debt by whatever means necessary. The [c]ourt may have looked upon this differently if the signature of Wife's name caused her any additional debt, but under the circumstances, his signature thereof cannot reflect on his credibility. The crime of Forgery (18 Pa.C.S. § 4101) requires specific "intent to defraud or injure" someone. In the instant case, evidence indicated that Husband's signature of Wife's name on tax returns actually benefitted Wife, and therefore, there is no forgery.

TCEDO at 8-9. Also, in the Rule 1925(a) opinion, the court reiterated this reasoning and further pointed out that Wife's claim that Husband concealed information about his assets could have been rebutted by Wife by her producing evidence contrary to Husband's testimony. *See* TCO at 9-10. Because Wife failed in this regard, we conclude that the trial court properly relied solely on evidence of record and did not abuse its discretion. Again, Wife has failed to convince us otherwise.

In Wife's final issue, she claims that the court did not consider the fact that she "was exposed to an extensive campaign of hostility, threat, intimidation, and physical/mental/emotional abuse[,]" which "allow[ed]

- 12 -

Husband to use the court proceedings to abuse the Wife, and harm her financially, and deprive her of her children well into the future." Wife's brief at 45-46. To support this contention, Wife cites two protection from abuse orders that were entered in 2013 and 2014. She also again mentions her attorneys' withdrawals, which she claims impaired her ability to discover documents to support her position that Husband used coercive tactics that amounted to fraud.

In addressing this issue, the court recognized Wife's argument as an allegation "that she was subjected to threats of bodily harm and psychological pressure by [Husband]." TCEDO at 12. However, the court stated that "[t]here [was] no evidence on the record relating to these claims." *Id.* The court also noted any allegations that Husband attempted to alienate the children were properly raised in a custody proceeding.

Although Wife claims that she submitted into evidence a lengthy accounting of Husband's conduct toward her, she has not provided any indication where in the extensive record this accounting can be found. Moreover, our in-depth review of the record failed to locate the document Wife claims she submitted. Without evidence of record to support her allegations, we conclude that the trial court did not abuse its discretion in refusing to accept Wife's assertions that Husband threatened her or applied psychological pressure. Again, we resolve that Wife's last issue is without merit.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/30/2016