**Jeanianne C. BRODY, Appellee,**

v.

**Michael C. BRODY, Appellant (at 1698).**

**Jeanianne C. Brody, Appellant (at 1807),**

v.

**Michael C. Brody, Appellee.**

Superior Court of Pennsylvania.

Argued May 17, 2000.
Filed Aug. 28, 2000.

Joanne R. Wilder, Pittsburgh, for Michael C. Brody.

Gary G. Gentile, Pittsburgh, for Jeanianne C. Brody.

Before: KELLY, FORD ELLIOTT, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Both Jeanianne Brody ["Wife"] and Michael Brody ["Husband"] appeal from the order entered below. We affirm in part and reverse and remand in part.

The parties were married on April 19, 1986, separated on March 10, 1995, and divorced on December 29, 1997. The parties are the parents of Benjamin (d.o.b. September 30, 1987) and Jordan (d.o.b. April 16, 1993). Wife has primary custody of the parties' children and Husband has partial custody. Husband remarried on May 25, 1998. Husband's current wife is not employed and they have no children. Wife is not remarried.

At the time of trial, Husband was forty-five (45) years old and was an anesthesiologist and shareholder of Beaver Anesthesia Associates, Inc. Husband's compensation from Beaver Anesthesia Associates was $415,547 in 1998, $424,898 in 1997, and $438,817 in 1996. In 1996 Husband had additional income of $4,384.

At the time of trial, Wife was thirty-nine (39) years old. Wife earned a high school diploma, attended the University of Pittsburgh for two (2) years, completed a Barbizon modeling course, took a Wilma Boyd training program, and studied one (1) semester at Chatham College in 1989. Wife previously was employed as a dental assistant, a receptionist at a hospital, at a daycare center, and for her father in one of his companies. Wife earned $3,800 in 1993, $20,048 in 1994, and $8,000 in 1995. Wife quit her employment when the parties separated and had no income in 1996 or 1997. Wife resumed working part-time as a receptionist at one of her father's companies in Fall 1998. Wife's family is

wealthy and has provided abundant support to Wife and her family, even during the marriage. Wife had agoraphobic symptoms that are now controlled by medication.

Trial Court Opinion, 1/11/00, at 2–3. The procedural history of this case is as follows:

[t]he parties filed an earlier appeal [*Brody v. Brody*, 701 A.2d 773, unpublished memorandum (Pa.Super. 1997)] to [the trial court's] July 12, 1996 order concerning exceptions to the Master's Recommendation for the support of [Wife's] and [Husband's] minor children. On July 14, 1997, the Superior Court affirmed [the trial court's] July 12, 1996 order.

Judge Max Baer, by order dated July 30, 1998, appointed Master Patricia G. Miller to resolve claims pertaining to the parties' divorce action. By order dated July 20, 1997, Judge Ronald Folino deferred Wife's modification petition to equitable distribution. Pursuant to a March 1, 1996 order, Husband paid alimony *pendente lite* and child support of $10,500 per month based on Husband's monthly net income at $20,107 per month and Wife's monthly net income at zero. Seven (7) days of trial were held before Master Miller on January 11, 12, 25, 27, 28, February 22, and March 15, 1999.

On March 29, 1999, Master Miller filed her Report and Recommendation. Husband filed exceptions to the Master's Recommendation, and Wife filed cross-exceptions. On September 28, 1999, [the trial court] sustained Husband's exceptions in part and dismissed them in part. Husband's exceptions were sustained as to the termination of alimony *pendente lite*. [The trial court] ordered alimony *pendente lite* to terminate as of the date of the order. Husband's other exceptions and Wife's cross-exceptions were dismissed. Husband appealed from the September 28, 1999 exceptions order and Wife filed a cross-appeal.

*Id.* at 1–2. Those appeals are before us now.

¶ 2 Wife frames several issues for our review:

I. With regard to Wife's temporary ownership in Cost Company, whether the lower court abused its discretion in the following respects:

A. Whether the lower court erred in failing to classify Wife's temporary, seven (7) month ownership interest in Cost Company as a "sham" and over which she had no control, access and/or entitlements?

B. Whether the lower court erred in attributing realizable value to Wife related to her temporary sham ownership interest in Cost Company?

C. Whether the lower court erred in failing to recognize that all disbursements to Wife from Cost Company were offset by an equal amount of tax liability resulting in no net gain to Wife for her sham ownership interest in Cost Company?

D. Whether the lower court erred in assuming that the redemption of Wife's sham ownership interest in Cost Company was actually paid to Wife or was to be paid to Wife in the future?

II. Whether the lower court abused its discretion in failing to award Wife equitable reimbursement by way of alimony in recognition of her contributions to Husband's increased earning capacity and career?

III. Whether the lower court abused its discretion in awarding Wife only 55% of the marital estate in light of Husband's earning power and other related factors?

IV. Whether the lower court abused its discretion in failing to award Wife reasonable counsel fees and expenses?

V. Whether the lower court abused its discretion in failing to modify Wife's APL, pursuant to her petition for modification?

VI. Whether the lower court abused its discretion in terminating Wife's APL award as of September 28, 1999?

**1278** ∎ ▬▬▬▬▬▬▬▬▬▬

VII. Whether the lower court abused its discretion in failing to assign Husband 100% responsibility for tuition and various unreimbursed expenses of the parties' two children?

Brief for Wife at 4.

¶ 3 Husband raises four issues on appeal:

1. Did the trial court fail to properly calculate the children's reasonable needs and consequently enter a confiscatory support order?

2. Did the trial court err in ignoring [H]usband's employment agreement and valuing his minority interest in his medical practice as a going concern?

3. Did the trial court incorrectly calculate the marital value of the [W]ife's interest in her family business?

4. Did the trial court err in finding that [W]ife contributed to [H]usband's increased earning power as to justify a distribution of marital property in her favor?

Brief for Husband at 2. We address each in turn and combine some for simplicity's sake.

∎ ¶ 4 Wife first claims that the court erred in numerous ways regarding her alleged "sham" interest in her father's company. In 1993, Wife's father formed "Cost Company" with himself as settlor and trustee but with Wife owning 45% and Wife's sister owning 55%. *See* Brief for Wife at 10. Seven months later, "Wife's 45% interest was redeemed pursuant to the Redemption Agreement." *Id.* The master valued this at $251,114, minus $157,000, which Wife and Husband had already received. *See* Master's Report and Recommendation at 11. The trial court adopted this figure. *See* Trial Court Opinion, 1/11/00, at 11. Throughout litigation, Wife claimed that her father established the company in her name to shield it from litigation he was involved in with his brother. Thus, Wife now contends, she did not truly own the company; it was a "sham" and, consequently, not marital property. We agree with Husband, however, that "Wife confuses motive with in-

tent." Brief for Husband at 14. Wife does not argue that her father did not intend to give her the company; she merely argues that he did so to hide it from his brother. Thus, it was his intent to give it to her, no matter what his motive may have been. Our Supreme Court has previously said, "once it is determined that donative intent was present, inquiry into the reason or motive for a gift becomes meaningless." *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534, 539 n. 1 (1988). The trial court did not err in determining that Wife owned forty-five percent of Cost Company.

∎ ¶ 5 Second, Wife contends that even if she did have an interest in the company, the court below "erred in attributing realizible [sic] value to Wife." Brief for Wife at 24. She claims that Husband's expert came to an erroneous figure in reliance on incorrect data provided by her own expert. Husband's expert valued the increase in value of Wife's interest at $251,114. *See* Master's Report and Recommendation at 10. The master remarked: "it was difficult for [Husband's expert] to receive supporting documentary evidence. Indeed, during the hearing itself, [Wife's witness] testified to certain alleged facts but, when asked for documentary proof, asserted that the supporting documentary evidence was privileged and thus could not be revealed. Upon being confronted with the fact that the evidence would be stricken if the supporting documentation was not produced, it was immediately made available, the privilege having been waived." *Id.* at 10–11. The master further said, "[I] find[ Husband's expert's] value of $251,114 for the marital property component to be totally persuasive, credible and supported by the evidence." *Id.* at 11. Wife, however, asserts that Husband's expert relied on faulty information and that, even if it was the result of deliberate misinformation by her advisors, "the resultant conclusion reached by Husband's expert was inaccurate." Brief for Wife at 25. We are not convinced that Husband's expert relied on the wrong information; but

if indeed Wife's advisor misrepresented facts to Husband's expert, Wife cannot now rely on that misinformation to her advantage. Indeed, equitable estoppel, which " 'arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief' " would prohibit her from doing so. *Zitelli v. Dermatology Education and Research Foundation*, 534 Pa. 360, 633 A.2d 134, 139 (1993) (quoting *In re Estate of Tallarico*, 425 Pa. 280, 228 A.2d 736, 741 (1967)). The master saw the evidence, heard the expert testimony, and made factual findings based on that testimony, and the trial court adopted her reasoning. We see no error.

■ ¶ 6 Next, Wife argues that the court below erred in assigning her any increase in value for Cost Company for marital property purposes. *See* Brief for Wife at 30. She claims that she had a net increase of zero, and thus that the court should have found no increase in her share during the marriage. *See id.* The master found that the property increased $251,114 in value, that Wife and Husband received $157,000 of that during the marriage, and that therefore the remaining increase was $94,111. *See* Master's Report and Recommendation at 11. The trial court adopted that finding. *See* Trial Court Opinion, 1/11/00, at 9. " 'When reviewing an order of equitable distribution, our standard of review is limited, and we will not disturb the trial court's decision absent an abuse of discretion or error of law which is demonstrated by clear and convincing evidence.' " *Gilliland v. Gilliland*, 751 A.2d 1169, 1171, 2000 WL 329651, at \*2 (Pa.Super.2000) (quoting *Wellner v. Wellner*, 699 A.2d 1278, 1283 (Pa.Super.1997)). Moreover, " [t]he determination of whether an asset is part of the marital estate is a matter within the sound discretion of the trial court.' " *Id.* (quoting *Tagnani v. Tagnani*, 439 Pa.Super. 596, 654 A.2d 1136, 1138 (1995)). Wife provides us with nothing that contradicts the factual findings of the

trial court; instead she says that the amount "should not be counter [sic] for equitable distribution." Brief for Wife at 30. We find no abuse of discretion in the trial court's adoption of the master's factual finding.

■ ¶ 7 Regarding Husband's claim, both the master and the trial court found that Husband and Wife had received $157,000 of her entitlement during the marriage. *See* Master's Report and Recommendation at 9, 11; *see also* Trial Court Opinion, 1/11/00, at 6. We are confused as to why Husband contends that this is not marital property, as he admits that "Wife received distributions totaling $157,000 prior to separation." Brief for Husband at 9. We thus disagree with his claim that "it is clear from the record that Wife received, post-separation, most or all of the funds that the [m]aster had mistakenly determined had been consumed during the marriage." *Id.* at 10. We find no such mistake, either in the master's finding or in the trial court's adoption of that finding.

■ ¶ 8 Wife next argues that the trial court erred when it failed to award alimony to her "in recognition of her contributions to Husband's increased earning capacity and career." Brief for Wife at 31. We address this along with Husband's fourth issue, *i.e.*, whether the court below erred in finding that Wife contributed to Husband's increased earning power at all. *See* Brief for Husband at 11–13. We first note that neither party cites any cases or statutes to bolster its argument. Rather, Wife spends several pages arguing ·that the court below had the authority to award alimony to her based upon the fact that she contributed to Husband's increased earning capacity. *See* Brief for Wife at 31–35. This argument confuses the true issue here; the issue is whether the court below was required to award her alimony for supporting Husband during his training on top of the award of greater than fifty percent of the marital estate. The court below expressly awarded fifty-five percent of the marital estate to Wife be-

cause she benefited her Husband's career. *See* Trial Court Opinion, 1/11/00, at 9. We find this fair. Nor are we convinced by Husband's argument that Wife did not benefit his career. We will not ignore the trial court's finding that Wife named eleven specific instances where she benefited Husband's career, from paying plane fare to providing a furnished home during his residency. *See id.* at 8. We thus hold that both appellants' arguments are without merit on this issue.

■ ¶ 9 Wife also claims that the court below erred when it awarded her "only" 55% of the marital estate. Brief for Wife at 35. Although Wife has failed to cite any legal authority in support of her argument, our review is not hampered and we will address this issue. As we noted above, " '[w]hen reviewing an order of equitable distribution, our standard of review is limited, and we will not disturb the trial court's decision absent an abuse of discretion or error of law which is demonstrated by clear and convincing evidence.' " *Gilliland*, 751 A.2d at 1171, 2000 WL 329651, at *2 (quoting *Wellner v. Wellner*, 699 A.2d 1278, 1283 (Pa.Super.1997)). To distribute marital assets, the trial court must look to the factors enumerated in 23 Pa.C.S.A. § 3502(a).[1] Here, the court did so. Wife does not argue that the court below failed to use the required factors; rather she

argues that the court did not apply the factors as she would have liked. *See* Brief for Wife at 35. In particular, she claims that the court did not completely consider the fact that she has "limited employability" and "few vocational skills," that she contributed to Husband's increased earning potential, that she has "few, if any, of her own individual assets," and that she will be serving as primary caregiver for the parties' two children. *Id.* at 35–36. Here, the court below clearly balanced the factors. The court found that Wife had "constant support" from her parents before, during, and after her marriage and would soon own the marital home. Trial Court Opinion, 1/11/00, at 10, 11. The court awarded more than fifty percent of the marital estate to Wife because she had contributed to Husband's increased earning power and was the custodian of the children. *See id.* at 11. The trial court also found that Wife "is capable of working" and, indeed, can work for her father but chooses not to. *Id.* at 12, 10. We also note the master's comments regarding Wife's employability:

Wife is an articulate, intelligent woman who clearly possesses skills of which she is rightfully proud. Her most impressive volunteer activity is as co-chair of a fund raising committee for her church

1. Section 3502(a) reads:
 **(a) General rule.**—In an action for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors, including:
 (1) The length of the marriage.
 (2) Any prior marriage of either party.
 (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
 (4) The contribution by one party to the education, training or increased earning power of the other party.
 (5) The opportunity of each party for future acquisitions of capital assets and income.

 (6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
 (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.
 (8) The value of the property set apart to each party.
 (9) The standard of living of the parties established during the marriage.
 (10) The economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective.
 (11) Whether the party will be serving as the custodian of any dependent minor children.
 23 Pa.C.S.A. § 3502(a).

.... it cannot be said that [W]ife is "incapable of self-support through appropriate employment" since she has never made the slightest effort to enhance or even test her capabilities in this regard.

Master's Report and Recommendation at 20–21. Thus, Wife's contention that the trial court failed to consider her alleged unemployability is without merit. We see no abuse of discretion in the way the court balanced the factors.

¶ 10 Next, Wife contends that the trial court erred when it refused to award her attorney's fees. *See* Brief for Wife at 37–39. She claims that Husband has initiated most of the legal proceedings in this action (though she initiated the initial support action and the divorce), and thus her legal fees are higher because of his unreasonableness. *See id.* at 38–39. She also contends that her Husband earns enough money to pay his own legal fees, while she must "rely on the generosity of family members to assure that she has quality counsel." *Id.* at 39 (emphasis omitted). On review, we examine whether the court below abused its discretion. *See Plitka v. Plitka*, 714 A.2d 1067, 1070 (Pa.Super.1998). " 'The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial advantage; the parties must be 'on par' with one another.' " *Id.* (quoting *Perlberger v. Perlberger*, 426 Pa.Super. 245, 626 A.2d 1186, 1206–07 (1993.)). Moreover, " '[c]ounsel fees are awarded only upon a showing of need.' " *Id.* (quoting *Harasym v. Harasym*, 418 Pa.Super. 486, 614 A.2d 742, 747 (1992)). Here, the trial court found that Wife had not demonstrated need. *See* Trial Court Opinion, 1/11/00, at 11. Because Wife did not prove that she needed Husband to pay her counsel fees, the court below did not abuse its discretion in failing to award attorney's fees and expenses.

¶ 11 Wife also claims that the court below erred in failing to grant her petition to modify alimony *pendente lite.* Her argument here is cursory, and she does not cite to any caselaw other than the standard of review at the beginning of her brief. She does not give us the trial court's standard for granting or denying modifications or how the court below misapplied that standard. Instead, she reiterates the facts once more. "Pennsylvania Rule of Appellate Procedure 2119 contains mandatory provisions regarding the contents of briefs. Rule 2119(a) requires the argument to be followed by discussion and pertinent citation of authorities. Additionally, this Court has held that arguments which are not sufficiently developed are waived." *Commonwealth v. Irby,* 700 A.2d 463, 464 (Pa.Super.1997). Because she has utterly failed to develop this argument, we find it waived.

¶ 12 Wife next argues that the court erred in terminating her alimony *pendente lite.* Where an order regarding alimony *pendente lite* "is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court." *Jayne v. Jayne,* 443 Pa.Super. 664, 663 A.2d 169, 176 (1995). The obligation to pay alimony *pendente lite* "continues even after the entry of a final decree in equitable distribution when an appeal remains pending and terminates only after all litigation has ended." *Id.* The right to receive alimony *pendente lite* during an appeal is not absolute, however; "alimony pendente lite may be terminated before the litigation is concluded where the recipient has acquired assets of income which sufficiently equalizes the financial ability of the parties to pursue the action." *Id.* Wife claims that the court below did not award her enough assets to pursue litigation and thus that it erred in terminating her alimony *pendente lite.*[2] *See* Brief for Wife at 41. The trial court's findings, however, are contrary to her

---

2. Wife also claims that Husband has a "propensity for litigation" but fails to address the fact that she, too, is an appellant in the case at hand. Brief for Wife at 41.

claims. The trial court awarded her "$319,501 in pension assets" and Wife "continues to receive generous support from her parents and is capable of working." Trial Court Opinion, 1/11/00, at 12. The court also found that "Wife is receiving all the liquid or semi-liquid assets in the marriage" and "is entitled to receive additional redemption funds from Cost Company." *Id.* at 10. We therefore hold that Wife has acquired enough assets to pursue litigation on equal terms with Husband.

▪ ¶ 13 Wife next alleges that the court below erred by failing to order Husband to pay 100% of the children's unreimbursed expenses. For the most part, her argument here consists of a diatribe against Husband's new wife, who is not employed, and Husband's stepson, whom he intends to put through college. *See* Brief for Wife at 42–43. Wife argues that "Husband's primary focus should be the financial support of his own biological children." *Id.* at 43 (emphasis omitted). She does not address, however, why Husband's payments of child support, the children's educational expenses, and up to $500 per month in unreimbursed medical expenses is not enough, nor does she address this Court's earlier determination in *Brody v. Brody*, 701 A.2d 773, unpublished memorandum at 3 (Pa.Super.1997), that she had waived this argument pursuant to Pa. R.A.P. 2119 for failure to cite any authority or develop a coherent argument. *See Irby*, 700 A.2d at 464 (holding that "arguments which are not sufficiently developed are waived"). Thus Wife now attempts to litigate a previously litigated matter without detailing how circumstances have changed since the previous order. Further, she again fails to cite any authority or develop a coherent argument. We certainly will not excuse such failure on her second appeal. She has thus waived this claim pursuant to Pa.R.A.P. 2119.

▪ ¶ 14 We now turn to Husband's remaining claims. First, he argues that the court below failed to properly calculate the children's reasonable needs and thus erred in calculating child support. As with most legal determinations involving parental responsibilities, the primary concern when calculating support obligations is the best interest and welfare of the child. *See Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991, 994 (1984). When, as here, the combined income of the parents exceeds the promulgated support guidelines, 42 Pa.R.C.P. 1910.16–3,[3] the trial court must employ the formula enunciated in *Melzer*. *See Calabrese v. Calabrese*, 448 Pa.Super. 166, 670 A.2d 1161, 1164 (1996). Under the *Melzer* formula, a court must first determine the reasonable expenses of raising the children. *See Melzer*, 480 A.2d at 995. The court must then apportion these expenses between the parents according to their respective ability to pay them. *See id.* at 996. Husband claims that the court below cited *Melzer* but then ignored it and adopted the master's analysis instead. That, Husband claims, was a mistake because the master used the analysis previously found erroneous in *Beegle v. Rasler*, 395 Pa.Super. 174, 576 A.2d 1100 (1990). In *Beegle*, this Court reversed the trial court's order of child support because the lower court had failed to separately calculate the reasonable needs of the child. *See id.* at 1103. Instead, the trial court simply took the entire household's budget and divided it by the three people in the household. *See id.* Because the trial court never specifically determined the child's needs, this Court reversed and remanded for a more exact determination. *See id.* Here, the master used "two separate methods" to determine that Husband should pay $6,842 per month in child support. Master's Report and Recommendation at 21. Using one method the master determined

---

**3.** At the time this litigation arose, the maximum monthly income under the guidelines was $10,000, but the legislature amended that

figure to $15,000 in April 1999. *See* Pa. R.C.P. 1910.16–3.

At the original support hearing [W]ife's asserted needs for herself and both children in the amount of $24,957 was adjusted down to $10,500, or 42% of the asserted figure, for a variety of reasons. If three people have reasonable needs of $10,500 per month, it is reasonable to conclude that two of them have reasonable needs of approximately $7,000 per month.

*Id.* at 21–22. Using another method, the master then determined: "In the 1999 proceedings, [W]ife asserted reasonable needs for the children only of $15,909 per month. If those are similarly reduced to 42% of the asserted needs the figure is $6,682." *Id.* at 22 (citation omitted). The master then apparently averaged $7,000 and $6,682 to arrive at $6,842.[4] The trial court then substantially adopted the master's recommendation, see Trial Court Opinion, 1/11/00, at 4, but attempted to distinguish this case from *Beegle*, 576 A.2d at 1100, by claiming that the master had sufficient information regarding the children's needs before her. *See* Trial Court Opinion, 1/11/00, at 4. We are not convinced.

 ¶ 15 First, the master's first method is closely akin to the method found erroneous in *Beegle*, 576 A.2d at 1100. While the master had figures before her, she chose instead to simply divide the overall figure of $10,500 by three to arrive at $3,500 per person, then multiply it by two to arrive at $7,000 for the two children. This is erroneous, as the Court in *Beegle* made clear. It was thus error for the court below to adopt this analysis, and we are not convinced by the court's attempt to distinguish *Beegle*.

 ¶ 16 The master's second method was also flawed. She took the figure of $15,909 for the children's needs alone and reduced it to forty-two percent of that figure to arrive at $6,682. She provides no explanation as to why she chose to reduce it to forty-two percent other than she had done so before "for a variety of reasons." Master's Report and Recommendation at 21. The trial court

adopts such reasoning, though it states that several of the expenses listed by Wife are actually paid by her father and that the rest are substantially inflated. *See* Trial Court Opinion, 1/11/00, at 5. The court does not explain, however, the forty-two percent figure, nor does it detail what the actual reasonable needs of the children are. Lastly, the master did not adopt either figure from either method but instead, inexplicably chose to average the two. Because both methods were incorrect, we reverse and remand for the trial court to recalculate child support. We urge the trial court to specifically address the reasonable needs for these two children.

 ¶ 17 Husband next argues that the court erred in ignoring his employment agreement in its valuation of his business interest. The trial court found that Husband's expert valued his interest in Beaver Anesthesia Associates, Inc. at $75,380 while Wife's expert valued Husband's interest at $359,243. *See* Trial Court Opinion, 1/11/00, at 7. Each expert used a different analysis to arrive at his figure. *See id.* Husband now claims that both Wife's expert and the trial court are incorrect and points us to *McCabe v. McCabe*, 525 Pa. 25, 575 A.2d 87 (1990) for guidance. The trial court, meanwhile, relied on *Butler v. Butler*, 541 Pa. 364, 663 A.2d 148 (1995). We examine both in turn.

¶ 18 First, in *McCabe*, the husband was a partner in a law firm, and he and his wife disputed the amount that his partnership interest was worth. *See McCabe*, 575 A.2d at 88. The husband claimed that his interest was worth $18,900 pursuant to his partnership agreement, while his wife claimed that his interest was worth $287,276 as a "going concern." *See id.* Our Supreme Court held that the interest was properly valued at $18,900 because the husband could not realize the "going concern" value, which included "all of the firm's assets . . ., accounts receivable . . ., and work-in-progress." *Id.* at 89, 88. The

---

4. We note that averaging the two figures would result in an amount of $6,841.

Court relied on the fact that the husband could not trade his shares publicly or privately, sell or liquidate the firm, or "remove from the firm a proportionate share of the accounts receivable, work-in-progress accounts, or other accounts included in the 'going concern' value." *Id.* at 89. Therefore, the Court held, because "[u]nder no circumstances can a partner liquidate his share of the partnership and receive a proportionate share of the firm's total value . . . . it would be unequitable to apply a 'going concern' value to the partner's share." *Id.* Husband's reliance on *McCabe* is misplaced, however, because his situation is entirely different. In his case, the employment agreement provides that Husband will receive "such compensation, if any, accrued under the terms of this Agreement," "an amount equal to his equal share of the Corporation's Accounts Receivable," and "an amount equal to his equal share of the Cash held by the Corporation." Beaver Anesthesia Associates, Inc. Employment Agreement, 2/23/94, at 7(c). Therefore, he will receive a proportionate share of the firm's value, unlike the husband in *McCabe*.

¶ 19 *Butler*, 663 A.2d at 148, on the other hand, is more helpful. In *Butler*, the husband was a partner in an accounting firm, and he and his wife disagreed about the valuation of his interest in the firm. *See id.* at 150. The Court found that the husband's monetary share in the firm was a fixed amount, and thus did not rely on current monetary value as did the employment agreement in *McCabe*. *See id.* at 153. Thus, the facts of *Butler* and the case at hand are very different, but it is the Court's analysis that we find helpful. The Court wrote, "there can be no single formula for valuing a business interest of a spouse for purposes of equitable distribution." *Id.* at 154. The Court then set forth "guiding principles": "[A] buy/sell agreement will *not* always be beneficial for purposes of ascertaining a spouse's present interest in the business" because they "may not reflect the current situation" and "an existing buy/sell · agreement is to be viewed only as a factor or possible aid in valuing that interest." *Id.* The Court then concluded, "In sum, then, while buy/sell agreements may be a factor which aids the courts in ascertaining the present worth of a spouse's business interest, such are not necessarily determinative of that issue." *Id.* at 155. Here, both the master and the trial court looked at the agreement and found that it was not helpful because it did not include various factors, such as professional goodwill and various buy-ins. *See* Trial Court Opinion, 1/11/00, at 7–8; *see* Master's Report and Recommendation at 14. Since we are not convinced that the trial court's valuation method was erroneous, we affirm this portion of the trial court's order.

¶ 20 For the above reasons, we reverse the trial court's determination of child support and remand for recalculation. We affirm the rest of the order.

¶ 21 Order affirmed in part, and reversed and remanded in part. Jurisdiction relinquished.

¶ 22 FORD ELLIOTT, J., concurs in the result.