J-A15026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHANNON C. BOWMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JON S. BOWMAN | : | No. 1263 MDA 2023 |

Appeal from the Order Entered August 14, 2023
In the Court of Common Pleas of Cumberland County Domestic Relations
at No(s):  00221 S 2016,
00661 S 2016, 2016-01738,
PACSES No. 293115832

| | | |
|---|---|---|
| JON S. BOWMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHANNON C. BOWMAN | : | |
| | : | |
| Appellant | : | No. 1264 MDA 2023 |

Appeal from the Order Entered August 14, 2023
In the Court of Common Pleas of Cumberland County Domestic Relations
at No(s):  00661 S 2016,
PACSES No. 070116084

| | | |
|---|---|---|
| JON S. BOWMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHANNON C. BOWMAN | : | |
| | : | |
| Appellant | : | No. 1271 MDA 2023 |

Appeal from the Order Entered August 14, 2023

J-A15026-24

In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2016-01738,
PACSES No 038115836

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                    **FILED: SEPTEMBER 13, 2024**

Shannon C. Bowman ("Wife") appeals from the orders[1] entered by the Cumberland County Court of Common Pleas ("trial court") overruling her exceptions to the support master's report and recommendation and making its December 15, 2021 orders final. Upon review, we affirm.

This Court has previously set forth a portion of the lengthy and tortured history of this case:

> The parties wed on October 12, 2013[,] and separated less than three years later on February 8, 2016. They had one child during the marriage[, born August 2014]. In March 2016, Husband filed for divorce thereby creating the divorce docket. In August 2016, Wife filed for child support, creating the child support docket. Also in August 2016, Husband filed for spousal support, creating the spousal support docket. The [trial] court issued a single support order. …
>
> In 2017, Wife appealed the calculation of the support order to the Superior Court. **See J.S.B. v. S.C.B.**, 2018 WL 4374650, 1464 MDA 2017 (Pa. Super. 2018) (non-precedential decision). In that prior appeal, this Court affirmed the portion of the support order relating to child support, while quashing the portion relating to spousal support. …

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The order lists three separate dockets: 221 S 2016 (child support docket); 661 S 2016 (spousal support docket); and 16-01738 (divorce docket).

- 2 -

In September 2018, immediately after the issuance of our prior memorandum, Wife filed with the trial court a petition for modification of the existing support order, seeking to terminate her spousal [support] obligation to Husband.  That litigation began with a support conference …, then proceeded to a *de novo* hearing before the support master …, [and the support master issued a report and recommendation in March 2019.  Relevant herein, the master specifically made calculations as to Husband's salary starting in January 2019, which was lower than his 2018 salary because of an unconventional bonus structure.  This report] culminated with exceptions to the trial court ….  After further orders, … the trial court ultimately issued the order …, which … dismissed Wife's exceptions[.  The trial court denied Wife's exception as to Husband's 2019 income, finding it was supported by substantial evidence.  The order set forth Husband's obligation to pay Wife child support, and also determined that Wife had an obligation to pay Husband spousal support.  As a result, Husband owed Wife less child support than he otherwise would have had to pay.]

***Bowman v. Bowman***, 798 MDA 2020, 2021 WL 462855, at **1-2 (Pa. Super. Feb. 9, 2021) (non-precedential decision).

In the interim, on the divorce docket, the parties were unable to agree to equitable distribution.  As a result, the divorce master held hearings for the equitable distribution of the parties' property.[2]  The master issued a report and recommendation on April 25, 2019.  The master reiterated that Wife's child support award was offset by Husband's spousal support award.  Wife filed nineteen exceptions to the divorce master's report.  The trial court denied Wife's exceptions and adopted the master's recommendation by an order dated December 11, 2019.  This order became final when the trial court

---

[2]  This case involved different support and divorce masters.

entered the divorce decree on March 12, 2020. Wife's obligation to pay spousal support terminated on this date. Wife filed an appeal, raising claims regarding the equitable distribution award. As a result of the appeal, the trial court ordered Wife to pay Husband alimony pendente lite ("APL"). This Court ultimately affirmed the trial court's order denying Wife's exceptions to the master's report and recommendation dividing the marital estate. *See* *Bowman v. Bowman*, 655 MDA 2020, 2021 WL 462029 (Pa. Super. Feb. 9, 2021) (non-precedential decision).

On March 16, 2020, Wife filed a petition for contempt, requesting Husband provide her with his 2019 W-2 after receiving his bonus, as Husband failed to timely inform her of his increased pay in 2017 and 2018. In November 2020, the trial court denied the petition, and noted that the parties must exchange their respective W-2 forms prior to February 28 of each year. On March 12, 2021, Wife filed a petition for modification of support, arguing that Husband's 2020 pay should be retroactively calculated for the entire year and her APL/spousal support to Husband should be terminated. On June 11, 2021, Wife filed a petition for immediate termination of her obligation to support Husband. Wife argued that because of the short duration of the marriage (twenty-eight months), the parties had separated over sixty-four months prior to the filing of the petition, and Husband could support himself, her support obligation should be terminated effective January 2019 based upon the short duration of the marriage. Wife further averred that Husband

should pay the full adjusted guideline amount in child support. On October 28, 2021, the support master held a hearing on Wife's petitions.[3]

On December 15, 2021, the support master issued a report and recommendation. Therein, the master established a child support obligation for Husband and noted that Wife's spousal support obligation was used as an offset to Husband's child support obligations between July 26, 2019, and March 12, 2020. Notably, the master did not recalculate Wife's support from January 2019 to July 2019, despite Wife's claim related to Husband's increased pay. The master further stated that Wife's spousal support obligation converted to APL on March 13, 2020, and Wife's APL obligation terminated on February 9, 2021, when this Court issued its decision regarding the equitable distribution award. Of particular relevance to the matter before this Court, the master rejected Wife's challenge to Husband's entitlement to APL based on the length of the marriage as compared to the length he received support, noting that Husband's continued receipt of support was a direct result of Wife's choice to appeal the equitable distribution award.

Additionally, the support master found that Husband moved into his paramour's home in October 2019. The master noted that Husband was

---

[3] In the interim, the trial court held a custody trial in November 2021, which resulted in an amended custody order. Wife appealed this order, challenging the payment for therapy for the parties' child. This Court affirmed the trial court's order. *See Bowman v. Bowman*, 447 MDA 2022 (Pa. Super. Nov. 29, 2022) (non-precedential decision).

previously paying rent of $925 and approximately $600 in utilities; however, upon moving into his paramour's home, he was no longer paying for housing and only paid utilities at the new home. As a result, the master awarded Wife a twenty percent downward adjustment to her spousal support obligation from October 1, 2019.

On December 15, 2021, the trial court entered separate orders at the three dockets adopting the master's report and recommendation. First, the trial court entered an order finding Husband's child support obligation to be $627.00 per month. Next, the trial court entered an order under the spousal support docket that Wife's spousal support obligations were used as offsets to Husband's child support obligations between July 26, 2019, and March 12, 2020, and Wife's spousal support obligation converted to APL on March 13, 2020. Finally, the trial court entered an order on the divorce docket, stating that between March 13, 2020 and February 9, 2021, Wife's APL obligations were used as offsets against Husband's child support obligations, and Wife's APL obligation terminated on February 9, 2021.

On January 4, 2022, Wife filed exceptions to the support master's report and recommendation. Wife argued that the master abused his discretion in finding that Husband was entitled to APL for a longer period than they were married; in his calculation of child support, spousal support and APL; in his calculation of Husband's responsibility for their child's preschool costs; in his failure to recalculate Husband's support between January 2019 and July 2019

due to his misrepresentations of his income; and deciding arrearages. Husband filed a response. On August 22, 2022, the trial court overruled Wife's exceptions. Notably, regarding Wife's claims related to recalculating Husband's support between January and July 2019, because of an increase in Husband's income, the trial court noted that very little evidence was presented to the master and found there was no substantial change in the facts or evidence to provide relief. The trial court, however, remanded the issue of the duration of the award of APL and spousal support to the master. Specifically, the trial court found that it had referred the issue to the support master, and the issue bounced back and forth between the support master and the divorce master, but had not been fully litigated.

The support master held a hearing on January 21, 2023, after which it denied Wife's claim that her spousal support obligation to Husband should have ended effective January 2019. Wife again filed exceptions to the support master's report and recommendations. The trial court entered separate orders at each docket overruling Wife's exceptions and affirming the support master's recommendation, and ruled that the December 15, 2021 orders were final orders. Wife filed timely, separate appeals from each order, which this Court consolidated sua sponte, raising the following issues for our review:

1. Did the lower court err by concluding that [Wife] was afforded the opportunity for the support awards to be credited in equitable distribution?

2. Did the lower court err by concluding that Wife bore responsibility for the length of the divorce when it was actually Husband who delayed the proceedings for thirty months?

3. Did the lower court err when it did not deviate or terminate the spousal support and/or [APL] award(s) based on the short length of the marriage?

4. Did the lower court err when it refused to apply a deviation based on the circumstances of the [p]arties?

5. Did the lower court err by awarding APL?

6. Did the lower court err and/or commit an abuse of discretion by failing to retroactively recalculate support from January 2019 through July 2019[?]

Wife's Brief at 4-5.

Our standard of review for challenges to support orders is as follows:

We review support orders for abuse of discretion. We cannot reverse the trial court's support determination unless it is unsustainable on any valid ground. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record.

*S.M.C. v. C.A.W.*, 221 A.3d 1214, 1217 (Pa. Super. 2019) (citations and quotation marks omitted). Further, "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Childress v. Bogosian*, 12 A.3d 448, 455-56 (Pa. Super. 2011) (citation omitted).

As Wife's first three claims are interrelated, we will address them together. She contends that the trial court abused its discretion in directing her to pay APL and spousal support to Husband for fifty-nine months despite the parties being married only twenty-eight months. Wife's Brief at 15, 17, 20. According to Wife, although she attempted to raise this issue during the equitable distribution litigation, this Court directed her to raise it during support litigation, wherein the trial court found that the duration of the marriage and support award was credited in the equitable distribution award. *Id.* at 15-17. Wife thus argues that she did not waive her claim because she could not raise it during her equitable distribution litigation. *Id.* at 17.

Wife further claims that the support action had no impact on the divorce hearings or decision, and that it was Husband's actions, not her litigation, that lengthened the divorce timeline. *Id.* at 18-19, 20, 21-22. Wife argues that her filings and appeals were merely protecting her rights. *Id.* at 17-18.

Wife also argues that the support master and trial court failed to properly consider the explanatory comment to Pa.R.Civ.P. 1910.16-1(c)(2), which provides that courts must consider the duration of a marriage in determining the duration of spousal support or APL. *Id.* at 21, 24. Wife highlights that the trial court erroneously indicated that the spousal support began in August 2016, when it began in March 2016. *Id.* at 23-24. She further notes that the support master erroneously considered spousal support and APL separately in finding that neither one independently is much longer

than the duration of the marriage. *Id.* at 23. She contends that her support obligations should have ended in January 2019. *Id.* at 25.

The Divorce Code provides, "[i]n proper cases, upon petition, the court may allow a spouse reasonable alimony pendente lite, spousal support and reasonable counsel fees and expenses." 23 Pa.C.S. § 3702. Relevantly, "[i]n determining a spousal support or alimony *pendente lite* obligation's duration, the trier-of-fact shall consider the marriage's duration, *i.e.*, the date of marriage to the date of final separation." Pa.R.Civ.P. 1910.16-1(c)(2); *see also* Pa.R.Civ.P. 1910.16-5(b)(8) (in deciding whether to deviate from spousal support or an APL obligation, courts must consider "the duration of the marriage from the date of marriage to the date of final separation"). To explain the consideration of the length of the marriage for spousal support/APL purposes, the explanatory comment of Rule 1910.16-1 states:

> The primary purpose of this provision is to prevent the unfairness that arises in a short-term marriage when the obligor is required to pay support over a substantially longer period of time than the parties were married and there is little or no opportunity for credit for these payments at the time of equitable distribution.

Pa.R.Civ.P. No. 1910.16-1, cmt. G.

The trial court observed that the duration of the marriage was considered by the divorce and support masters numerous times before the support master entered the December 15, 2021 report and recommendation. *See* Trial Court Opinion, 8/14/2023, at 5-10. The trial court found that the period of spousal support (until the entry of the divorce decree)—forty-eight

months[4]—and the period of APL (from the period of Wife's appeal of the equitable distribution award until this Court decision)—eleven months—was "not substantially longer than that of the parties' marriage so as to implicate the purpose of the applicable deviation factor." Trial Court Opinion, 8/14/2023, at 10 (footnote omitted). Further, the master specifically noted that Wife prolonged the payment spousal support and APL to Husband by her repeated and near constant filings in this case:

> Wife had filed exceptions to every report and recommendation in this support action. Each time Wife filed exceptions, the red [sic] result was that [the trial c]ourt dismissed all exceptions. Every time [the trial c]ourt dismissed Wife's exceptions, Wife filed an appeal to the Pennsylvania Superior Court. Similarly, Wife had filed exceptions to the divorce hearing officer's report and recommendation in the parties' divorce action. In contrast, Husband has filed some petitions in this case, but Husband never sought de novo review, had never filed exceptions to a report and recommendation, and had never filed an appeal to the Pennsylvania Superior Court.

> Further, the parties had significant assets to apportion during equitable distribution. … Wife's attorney spent very little time during the equitable distribution hearings developing a record regarding this length-of[-]marriage issue. Nonetheless, the divorce hearing officer mentioned Wife's spousal support obligation in his report, and ultimately awarded Wife's 60% of all marital assets.

Report and Recommendation, 2/27/2023, at 2-3.

---

[4] While Wife argues the trial court had the erroneous date of the beginning of the spousal support as August 2016 in its opinion denying Wife's exceptions, the master correctly states that the spousal support began in March 2016. *See* Report and Recommendation, 2/24/2023, at 2. We do not find the trial court's mistake in this regard to constitute reversible error.

Wife does not demonstrate that the trial court abused its discretion in declining to end her spousal support obligation in January 2019 based upon the length of the marriage. While Wife is permitted to pursue her rights, she cites no authority to support her claim that a trial court cannot extend spousal support or APL following its consideration of the length of the marriage based upon delays caused by Wife in deciding the equitable distribution of the parties' property, which resulted in a 60/40 split of assets in Wife's favor. To the contrary, the law is clear that a dependent party is entitled to APL during the pendency of appeals related to matter of equitable distribution. **Schenk v. Schenk**, 880 A.2d 633, 647 (Pa. Super. 2005) .

As the master found Wife to have "caused a material portion of the delay in processing the simultaneous support and divorce litigations," Report and Recommendation, 2/27/2023, at 6, Wife has not established unfairness in the trial court's award. **See** Pa.R.Civ.P. 1910.16-1, cmt. G (noting the "primary purpose of this provision is to prevent the unfairness …").[5] Moreover, Rule 1910.16-1(c) simply requires the factfinder to consider the duration of the marriage, not adjust spousal support and APL to the precise length of the marriage in every case where the marriage is of short duration. Wife therefore

_____

[5] We note that while APL may be denied or terminated during the appeal where the receiving party acquires assets or income to equalize the financial ability of the parties to pursue the action, **see Brody v. Brody**, 758 A.2d 1274, 1281 (Pa. Super. 2000), Wife has not established this occurred in the instant case.

- 12 -

has not established that the trial court abused its discretion in declining to end the spousal support and APL effective January 2019.

In her fourth claim, Wife argues that the trial court abused its discretion in failing to deviate from the support and APL guidelines based upon the facts of this case. Wife's Brief at 26, 31, 32.[6] She asserts that the awards to Husband in this case did not just equalize the parties' resources, they enriched Husband. *Id.* at 27, 29. Wife contends that she brought more money into the marriage, she owned a home prior to the marriage, and Husband contributed very little to the marital estate. *Id.* at 27-28. She further notes that Husband used his income to eliminate approximately $30,000 of his premarital debt after the parties were married. *Id.* at 28. It is Wife's position that Husband receiving spousal support and APL put her in a worse financial position than he was in. *Id.* at 29. Wife claims that despite the 20 percent deviation on her payments to Husband because he was living fulltime with his girlfriend, Husband still had an advantage over her by $1270. *Id.* at 31-32. Wife also claims that the trial court's decision to deviate only 20 percent (as opposed to a higher number) was error because "Husband living in his paramour's house lessened his expenses and provided him a greater amount

---

[6] Alternatively, Wife again claims that the trial court should have terminated APL and spousal support in January 2019. Wife's Brief at 32. As we have already found no abuse of discretion in the trial court's decision not to terminate her support obligation in January 2019, we do not address this contention here.

of disposable income to support his [c]hild." ***Id.*** at 31. Wife argues that because Husband was not paying rent at his paramour's home, his total income with his new paramour was significantly higher than her own. ***Id.*** at 31-32.

At the outset, we observe that this Court previously rejected Wife's claim that the trial court failed to consider her contributions toward paying Husband's premarital debt:

> [T]he parties left to themselves their premarital responsibilities. As noted above, the master determined that Husband repaid his debts using his own funds from an account that was not comingled with the parties' marital assets. The master noted that, for the most part, the parties chose to maintain separate accounts in their individual names, with each contributing to a joint account from which they utilized for their joint expenses (such as utilities, groceries, taxes, the mortgage – and later – child expenses).
>
> … Wife did not contribute to the repayment of Husband's premarital debt, much less incur debt herself to unburden Husband. We note, however, that the master acknowledged Wife contributed more toward the parties' joint expenses, in large part because she earned considerably more income than Husband. Still, we find no error. To the extent that Husband was able to pay down much of his premarital debt during the course of the brief marriage, the same was reflected in the master's equitable distribution scheme whereby Wife received 60% of the assets. And although the master determined the total marital debt was relatively miniscule ($604.16), the master recommended that Wife only be responsible for only 40% of the marital debt. We discern no abuse of discretion in the court's decision to adopt the master's report.

***Bowman***, 2021 WL 462029, at *7. Wife seeks to rehash her prior argument in this appeal, and in essence asks this panel to overrule another panel of this Court. This we cannot do. ***See Commonwealth v. Taggart***, 997 A.2d 1189,

- 14 -

1201 n.16 (Pa. Super. 2010) ("one three-judge panel of this Court cannot overrule another").

Regarding Wife's remaining deviation claims, we begin by noting that the following factors must be considered in determining whether to deviate from the statutory child support, spousal support, or APL obligation:

(1)    unusual needs and unusual fixed obligations;

(2)    a party's other support obligations;

(3)    other household income;

(4)    the child's age;

(5)    the parties' relative assets and liabilities;

(6)    medical expenses not covered by insurance;

(7)    the parties' and the child's standard of living;

(8)    in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and

(9)    other relevant and appropriate factors, including the child's best interest.

Pa.R.Civ.P. 1910.16-5(b).  "The trier of fact is to consider all the relevant factors in determining whether a deviation is warranted; any one factor is not necessarily determinative." **Suzanne D. v. Stephen W.**, 65 A.3d 965, 972-73 (Pa. Super. 2013).  "Deviation will be permitted only where special needs and/or circumstances are present such as to render an award in the amount of the guideline figure unjust or inappropriate." **Ileiwat v. Labadi**, 233 A.3d 853, 861 (Pa. Super. 2020) (citation omitted).

Here, the master recognized that Husband moved into his paramour's home in October 2019. Master's Report and Recommendation, 12/15/2021, at 13. The master noted that Husband's paramour had a salary of $72,568, and that Husband benefited financially from the move because he no longer had to make rental payments. *Id.* at 13-14. The master further observed, however, that Husband was paying utilities at his paramour's home, totaling $600 per month. *See id.* at 14; *see also id.* at 16 (noting that Wife and Husband had similar monthly utilities costs). Further, finding that the difference in net income between the parties was $1781.02 per month in 2019, and that Husband had no housing liability while Wife had a mortgage payment of $1400 per month, the master concluded that reducing Wife's net income by the entire mortgage amount would be unjust and inappropriate because it does not recognize the difference in the parties' basic expenses. *See id.* at 16. Therefore, the master recommended a downward adjustment of 20 percent for Wife's spousal support, which reduced her obligation from $712 per month to $570 per month. *Id.* at 17, 21-22.

The trial court adopted the master's recommendation and addressed Wife's claim of error as follows:

> Wife's [sic] was granted a 20% downward deviation to her APL obligation based on Husband's living arrangements [with his paramour], beginning in October 2019. Wife has previously requested a termination in her support obligation to Husband in seven prior petitions.
>
> The Pennsylvania Supreme Court stated in ***Ball v. Minnick***, 648 A.2d 1192, 1196 (Pa. 1994)[,] that "[d]eviation will be

- 16 -

permitted only where special needs and/or circumstances are present such as to render an award in the amount of the guidance figure unjust or inappropriate." Here, [the trial court finds] there are no special needs or new circumstances present to justify a deviation in support awards beyond the 20% downward deviation in Wife's APL obligation that has already been granted.

Trial Court Opinion, 8/22/2022, at 5 (footnote omitted).

We discern no abuse of discretion by the trial court, as Wife does not cite to any special circumstances that would require further deviation. *See Ileiwat*, 233 A.3d at 861. Moreover, although Wife claims that the 20 percent downward deviation was not adequate, she fails to support her claim with any evidence of record aside from Husband's lack of a rental payment. To that end, Wife fails to present any calculation or citation to the record that the deviation granted to her did not account for Husband's reduced cost of living and the parties' specific circumstances. Likewise, Wife does not support her claims that her payment of spousal support and APL placed Husband in a superior income level compared to her own with any evidence of record. Based upon the foregoing, we conclude Wife's fourth claim is without merit.

In her fifth claim, Wife contends that the trial court erred in awarding APL to Husband between March 2020 and February 2021. Wife's Brief at 32. Wife argues that in January 2019, the divorce hearings had concluded, and that the remaining time until the entry of the divorce decree was waiting for court rulings. *Id.* at 33-34. According to Wife, because there was little active litigation, the parties were on equal footing after January 2019. *Id.* at 34. Wife claims that the payment of APL put Husband in a position of financial

- 17 -

advantage over her in the amount of $1270 per month. *Id.* Wife asserts that the master found that Husband was entitled to further support because she had filed an appeal, and that such a finding contradicts the Divorce Code in that support awards must be non-confiscatory and APL is to provide financial resources to parties who require it. *Id.* at 35-36.

> By way of background:
>
> [APL] is an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding. [APL] is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse. Also, and perhaps more importantly, [APL] is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare. [APL] is thus not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation.... [T]he purpose of [APL] is to provide the dependent spouse equal standing during the course of the divorce proceeding .... [APL] focuses on the ability of the individual who receives the [APL] during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse.

*Schenk*, 880 A.2d at 644–45 (citations and quotation marks omitted).

> While APL typically ends at the award of the divorce decree, which also should be the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable distribution, despite the entry of the decree, *APL will continue* throughout the appeal process and any remand until a final Order has been entered.

*Id.* at 647 (citation omitted; emphasis in original). Although APL does not continue automatically throughout a discretionary appeal, "public policy

*requires* that the dependent party be entitled to support during the pendency of appeals as of right." ***Id.*** (citation omitted; emphasis in original).

Here, Husband was entitled to spousal support until the entry of the divorce decree pursuant to guideline calculations. ***See*** Pa.R.Civ.P. 1910.16-4 (providing formula for support calculation). Additionally, Wife does not dispute that, at the time the divorce decree was entered, her appeal on matters of equitable distribution was pending before this Court. Therefore, Husband was entitled to receive APL until the resolution of the equitable distribution claims on appeal. ***See Schenk***, 880 A.2d at 647 (noting that wife was entitled to APL during the pendency of the appeal on the equitable distribution matters, and upon this Court's resolution of the appeal APL would cease). Further, the calculation and analysis of APL is the "same as the calculation and analysis of spousal support." Master's Report and Recommendation, 12/15/2021, at 21. Wife has not cited to any evidence to support her contention that Husband had a financial advantage over her as a result of the APL payments. ***See*** Pa.R.Civ.P. No. 1910.16-1(d) ("If the trier-of-fact determines that a party has a duty to pay support, there is a rebuttable presumption that the guideline-calculated support obligation is the correct support obligation."). Wife has not established any change in circumstances aside from Husband moving into his paramour's home, and the trial court accounted for this change by deviating her APL obligation downward twenty percent. Based on the foregoing, we have no basis to find that the trial court

abused its discretion in awarding Husband APL. *See Schenk*, 880 A.2d at 647.

In her final claim, Wife argues that the trial court erred in its determination of the parties' support obligations from January 2019 to July 2019 because it failed to properly calculate Husband's income. Wife's Brief at 36. Wife asserts that Husband misrepresented his bonus pay and that the trial court used Husband's speculative testimony about his 2019 pay rather than the pay listed in Husband's 2018 W-2 form. *Id.* at 37-38. Wife contends that her contempt filing to obtain Husband's 2019 W-2 was merely a means of forcing Husband to reveal his income, but without this information, she could not file a modification petition. *Id.* at 38. Wife seeks to have the case remanded for a recalculation of the support awards. *Id.* at 39.

When the issue pertaining to Husband's 2019 income was initially raised before the court, the trial court found that Husband's 2019 was, in fact, less than his 2018 income and that "substantial evidence was presented at the hearing to show that 2018 was an anomalous year in terms of []Husband's employment income." Trial Court Opinion, 2/26/2020, at 19. As it relates to Wife's most recent attempt to have the trial court recalculate Husband's 2019 income, based on his 2019 W-2, the trial court observed that "[t]he [s]upport [m]aster found that little evidence was presented on this issue during the

- 20 -

[s]upport hearing on October 28, 2021." Trial Court Opinion, 8/23/2023, at 7.[7]

Addressing Wife's claim in 2019—that Husband's 2019 income should be the same as his 2018 income—the support master found:

> [Husband] still works for the same employer, DHL Supply Chain (DHL). His current salary is $74,883 per year. However, in 2018 [Husband's] W-2 wages totaled $85,538. [Husband] claims that discrepancy of over $10,000 is the result of new policies at DHL regarding bonus structures. In December 2017, DHL decided to increase base pay for many of their employees, while at the same time reducing the expected bonus pay. DHL's intention was that for most employees the combined total of base pay plus bonus pay would be very similar, with only the proportions being different. However, this caused a one-year anomaly in reported W-2 earnings because in 2018 [Husband] was already receiving the increased base pay, but the bonus pay he received in 2018 was based on the pay structure as it existed in 2017. in short, for that one year [Husband] got the best of both worlds — an increase in his base pay and a large bonus structure.
>
> [Husband] estimated his 2018 bonus (which he will receive in 2019) as possibly being as low as $1000. I find that estimate to be suspiciously low. The paperwork that DHL gave to their employees in 2017 detailed the maximum target bonus under the new structure, which it set at 7.5% of the employee's salary. Thus, [Husband's] maximum bonus should be very close to $5,616. [Husband] credibly testified that he knows his scores for 2018, and he knows those scores will not give him a maximum bonus. Thus, imputing the full $5,616 to [Husband] would almost certainly set [Husband's] income too high; but I think that imputing only $1,000 would likely set [Husband's] income too low. For purposes of support, I recommend erring on the side of caution and estimating [Husband's] bonus at $4,000 in 2019,

---

[7] The trial court noted that this issue should have been handled in Wife's contempt petition filed in March 2020. However, our review of this petition demonstrates that Wife sought Husband's W-2 forms in a timely manner, and that Wife is not attempting to relitigate the issue before this Court. **See** Petition for Contempt, 3/16/2020.

meaning his total annual gross income available for support this year will be $78,883.

However, that does not address the higher pay that [Husband] received in 2018. [Wife] filed her first petition in May 2017. Between that filing date and December 31, 2017, there is no indication [Husband's] income differed materially from the income that had been used previously. Thus, during that time there was no material change in circumstances, so the previous obligation should remain in place. In contrast, between January 1, 2018, and December 31, 2018, it is clear that [Husband's] support obligation must be based on the actual income he earned that year. With annual gross income of $85,538, in 2018 [Husband's] net income available for support was $5,278.63 per month. Then, from January 1, 2019, and forward his obligation should be based on the $78,883 per year in anticipated earnings. At that level of annual income, [Husband's] net income available for support is $4,921.81 per month.

Master's Report and Recommendation, 3/29/2019, at 6-7 (footnotes omitted);

The master's recommendation was supported by the competent evidence of record. *See* N.T., 1/23/2019, at 26-28 (wherein Husband testified to the change in bonus structure at his job and the change in his pay structure). As Wife does not cite to any new evidence establishing a changed circumstances relating to the calculation of Husband's income from January to July 2019, we reject her claim. Wife seeks to rehash her argument that the trial court speculated as to Husband's income; based upon the record before this Court, we find no abuse of discretion. Accordingly, Wife's final claim is without merit.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>9/13/2024</u>